[Crim. No. 12718.   In Bank.   June 19, 1969.]

In re JENNIFER GREY ALLEN on Habeas Corpus.

---

*Assigned by the Chairman of the Judicial Council.

Marshall W. Krause and Paul N. Halvonik for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and John T. Murphy, Deputy Attorney General, for Respondent.

Leon E. Shiells as Amicus Curiae on behalf of Respondent.

BURKE, J.—In July 1968 petitioner's sentence was suspended and she was placed on probation following her plea of guilty of possession of a restricted dangerous drug without prescription. (Health & Saf. Code, § 11910.) By application for habeas corpus she attacks as invalid one of the terms and conditions specified by the court in its order granting probation. As will appear, we have concluded that the condition complained of was improper, is severable and does not affect the other terms and conditions of probation.

1. Availability of Habeas Corpus.

At the outset it may be noted that habeas corpus is a proper remedy to effect release from the restraint of probation orders. (*In re Osslo* (1958) 51 Cal.2d 371, 376 [334 P.2d 1], cert. den. 357 U.S. 907 [2 L.Ed.2d 1157, 78 S.Ct. 1152].)

2. Validity of Condition of Probation.

The condition of probation under attack is the requirement that the petitioner "reimburse the County of San Mateo for court-appointed counsel through the Probation Department."

Section 1203.1 of the Penal Code provides for the terms and conditions which a court may impose in the granting of probation and prescribes the statutory limits upon the exercise of the trial court's discretion in connection therewith. Since the section does not expressly authorize the imposition of the particular condition under attack here we must assume that the court deemed it authorized under the omnibus clause ''and *other reasonable conditions,* as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . .'' (Italics added.)

In *Gideon* v. *Wainwright* (1963) 372 U.S. 335, 344 [9 L.Ed. 2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733], the United States Supreme Court stated that not only certain precedents, to which it alluded, but ''also reason and reflection require us to recognize that in our adversary system of criminal justice, any person hailed into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.''

We may take judicial notice that judges in San Mateo County and in certain other counties have made use of the method utilized in the case at hand of reimbursing the county's treasury for funds expended in supplying counsel

for indigents. Although this concern for the financial burdens imposed upon the counties for such costs is commendable we believe that as knowledge of this practice has grown and continues to grow many indigent defendants will come to realize that the judge's offer to supply counsel is not the gratuitous offer of assistance that it might appear to be; that, in the event the case results in a grant of probation, one of the conditions might well be the reimbursement of the county for the expense involved. This knowledge is quite likely to deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation as emphasized by the court in *Gideon, supra*. Although in the instant case there is no indication in the record that petitioner was discouraged from exercising her constitutional right to counsel for, in fact, she requested and received counsel, neither does the record show that she was forewarned of the possibility that she might become indebted to the county for the cost of such service. The fact that such knowledge might have deterred her, and could well deter others, gives rise to our concern as to the validity of such a condition of probation. ■ The government is without constitutional authority to impose a predetermined condition on the exercise of a constitutional right or penalize in some manner its use. (See *Gardner* v. *Broderick* (1968) 392 U.S. 273 [20 L.Ed.2d 1082, 88 S.Ct. 1913] [police officer would be discharged unless he waived immunity from prosecution] ; *Sanitation Men* v. *Commissioner* (1968) 392 U.S. 280 [20 L.Ed.2d 1089, 88 S.Ct. 1917] [garbage men would be discharged unless they testified at a hearing investigating their activities] ; *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed2d 106, 85 S.Ct. 1229] [adverse comment unless defendant testified] ; *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209] [federal statute provided that if defendant waived a jury the death penalty could not be imposed].) Thus, in finding unconstitutional the statute involved in *Jackson, supra*, the court declared that ''Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. Cf. *United States* v. *Robel*, 389 U.S. 258, . . . *Shelton* v. *Tucker*, 364 U.S. 479, 488-489. . . . The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether the effect is unnecessary and therefore excessive.'' (20 L.Ed.2d at p. 147.)

■ We conclude that the imposition of the condition

under attack constitutes an impediment to the free exercise of a right guaranteed by the Sixth Amendment to the Constitution and as with respect to other impediments or forms of compulsion against the exercise of such rights may not be permitted by the courts.

In speaking of the right of an indigent to counsel the Supreme Court stated in *Miranda* v. *Arizona* (1966) 384 U.S. 436, 472-473 [16 L.Ed2d 694, 722-723, 86 S.Ct. 1602. 10 A.L.R.3d 974],[1] ''If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here. The privilege against self-incrimination secured by the Constitution applies to all individuals. The need for counsel in order to protect the privilege exists for the indigent as well as the affluent. In fact, were we to limit these constitutional rights to those who can retain an attorney, our decisions today would be of little significance. The cases before us as well as the vast majority of confession cases with which we have dealt in the past involve those unable to retain counsel. While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in *Gideon* v. *Wainwright*, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792] (1963), and *Douglas* v. *California*, 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] (1963).

''In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney; but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of

---

[1]The footnotes have been omitted from the quoted statements.

the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.''

The court in *Miranda* advised (p. 486 [16 L.Ed.2d p. 730]) that ''The practice of the FBI can readily be emulated by state and local enforcement agencies.'' Referring to the advice given by such agency prior to the interview of an individual taken into custody, the court stated: ''FBI Agents do not pass judgment on the ability of the person to pay for counsel. They do, however, advise those who have been arrested for an offense under FBI jurisdiction, or whose arrest is contemplated following the interview, of a right to free counsel *if* they are unable to pay, and the availability of such counsel from the Judge.''

It would appear utterly inconsistent to advise a defendant of his entitlement to the free service of counsel and later to exact repayment through the medium of a condition of probation. *Miranda* (p. 491 [16 L.Ed.2d p. 733]) made clear that where ''rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them.''

There is also a certain element of unfairness in the recoupment of costs expended for attorney's fees. The defendant by accepting counsel in effect is required to agree to whatever arrangements may be made by the court and the attorney employed by the county to represent him. The defendant is not a party to any negotiation as to a basis for the charge and there is no maximum limit imposed. The issuance of such a ''blank check'' might add to the deterring effect of a defendant accepting the appointment of counsel under such circumstances. In the affidavit which petitioner was required to fill out and execute in order to secure a court-appointed attorney in the present case, no suggestion is to be found that under certain circumstances she might be required to reimburse the county for the expense incurred.

The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to the granting of probation to defendants and the conditions thereof. (See Pen. Code, § 1203 et seq.) We recognize the heavy responsibility of a trial judge in reaching this determination and that it should remain as free from extraneous pressures as possible. It is entirely conceivable that should the practice of recouping attorneys' fees be further extended then

members of boards of supervisors, budget officers, presiding judges, etc., understandably on the alert for sources of revenue with which to meet burgeoning government costs, may seize upon this method as a means of meeting deficits in court and county budgets and encourage the more widespread use of this procedure. However worthy such motivations are, the introduction of budgeting considerations could well divert or dilute the attention which the judge must give to the specific considerations which the law requires him to have in mind in the sentencing process.

Conditions of probation which are not authorized by law are severable from and do not affect the valid conditions of the order. (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 629 [64 Cal.Rptr. 290]; *People* v. *Mason* (1960) 184 Cal. App.2d 182, 187 [7 Cal.Rptr. 525].)

The writ is granted and the Superior Court of San Mateo County is directed to modify its order to eliminate the condition that petitioner shall reimburse the county for court-appointed counsel. In all other respects, the writ is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.