[Crim. No. 7641. Third Dist. Dec. 2, 1974.]

In re MIGUEL A. GONZALES on Habeas Corpus.

**618**

## COUNSEL

Thomas Archer, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Robert D. Marshall and Brian F. Taugher, Deputy Attorneys General, for Respondent.

## OPINION

**FRIEDMAN, J.**—Petitioner, a state prison inmate, seeks habeas corpus, charging fatal irregularities in the proceedings which culminated in his commitment to the state prison in January 1974 and in the revocation of his parole from a prison commitment of January 1966.

The 1966 commitment resulted from a Los Angeles conviction of second degree robbery. In November 1971 petitioner was released on parole. Although he was later convicted of driving while under the influence of narcotics, the Adult Authority in May 1972 continued him on parole. In August 1973 he was arrested in Los Angeles and jailed on a heroin possession charge, a felony. His parole was suspended. While the felony charge was pending, petitioner suffered two narcotics-connected misdemeanor convictions. In November 1973 he appeared before the Los Angeles superior court with counsel (the public defender) and pleaded guilty to heroin possession. The trial judge informed him, in effect, that he belonged in prison; that the court proposed to admit him to probation on the current felony charge on the assumption that the Adult Authority would return him to prison and revoke his parole; that the court proposed to direct one year county jail time as a condition of three years on proba-

tion, the county jail time to be concurrent with time served in the state prison, "but reserving to the Court the fact that one of the conditions of the probation will be that he be violated upon his parole and returned to State Prison." Upon acceptance of these terms by petitioner and his counsel, the court pronounced judgment but suspended execution of sentence on the conditions the judge had described. The court continued the proceeding to a designated date for the purpose of inquiry into the Adult Authority's forthcoming action. Petitioner was returned to jail, with credit for time served prior to commitment.

In early December 1973 petitioner's parole officer submitted a report to the Adult Authority, explaining that petitioner had absconded from parole supervision in May; that in July and again in August he had been arrested; on both occasions he had been under the influence of narcotics and his arm bore fresh needle marks; that the parole officer wanted to work with the parolee in arranging addiction treatment, narcotics testing, close supervision and job placement. Responding to the parole agent's recommendation, the Adult Authority reinstated petitioner's parole and continued him on parole.

On the date set, petitioner was brought before the trial court. Noting that the Adult Authority had not revoked the defendant's parole, the court recalled that "the failure of the defendant to be committed to the State Prison" had been stated as a ground for revocation of probation. Thereupon the court revoked probation and committed petitioner to the state prison. He arrived at the prison on January 25, 1974.

Petitioner's parole agent then filed a supplemental report with the Adult Authority, recommending that parole be revoked since "Subject was returned to prison on a redetermination of sentence." Petitioner appeared before the Adult Authority and admitted the fresh conviction. His parole was revoked on April 15, 1974.

██ Although petitioner accepted probation on terms fixed by the Los Angeles Superior Court, he may challenge an invalid condition of probation in this habeas corpus proceeding. (*In re Bushman,* 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) ██ The order of the Los Angeles Superior Court conditioning continued probation on the Adult Authority's granted the court by Penal Code section 1203.1, abdicated the continuing discretion reposed in the court and created an interference with the Adult Authority's exercise of its statutory functions.

██ "When granting probation, courts have broad discretion to impose

restrictive conditions to foster rehabilitation and to protect public safety. Penal Code section 1203.1 authorizes the court to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, . . . and specifically for the reformation and rehabilitation of the probationer.' . . .

"A condition of probation imposed pursuant to Penal Code section 1203.1 is invalid if it (1) has no relationship to the crime of which the defendant is convicted, (2) relates to conduct that is not itself criminal, or (3) requires or forbids conduct that is not reasonably related to future criminality." (*In re Bushman, supra,* 1 Cal.3d at pp. 776-777.)

The superior court's probation order suspended execution of the prison sentence and decreed a year of jail custody if, but only if, the Adult Authority took defendant from jail and decreed his return to state prison; alternatively, the probation order decreed a prison term if, but only if, the Adult Authority decreed the subject's continued liberty on parole. The condition imposed by the court turned on the Adult Authority's future decision and not on defendant's behavior, criminal or noncriminal. Far from relating to the probationer's criminal conduct, it didn't "relate" to his conduct at all. It injected petitioner into a conflict of authority created by the judge's determination to pit his own power and judgment against the power and judgment of the Adult Authority. Such a condition transcends the boundaries of judicial authority fixed by section 1203.1, as interpreted in *In re Bushman, supra.*

■ A court is vested with continuing discretion to continue a defendant on probation or to revoke probation. (Pen. Code, § 1203.3; *People* v. *Lippner,* 219 Cal. 395, 400 [26 P.2d 457]; *People* v. *Walker,* 215 Cal. App.2d 609, 611 [30 Cal.Rptr. 440].) The exercise of that discretion is a judicial power manifested through the judge's personal examination of the case before him; it cannot be delegated to a nonjudicial agency. (See *People* v. *Tenorio,* 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993].) The order in question was an unlawful abdication of judicial discretion, making continued probation contingent upon the action of the Adult Authority, an agency independent of the court.

The Adult Authority, not the court, had statutory authority to determine whether to continue petitioner's parole or to revoke it. (Pen. Code, § 3060.) If the court believed that petitioner belonged in prison rather than in jail or on conditional liberty, the court had power to deny probation and impose a prison sentence. In that eventuality the Adult Authority could exercise its own judgment regarding the existing parole. According to the

terms of the probation order, an Adult Authority action reinstating petitioner on parole would result in judicial revocation of probation and a sentence of imprisonment at the hands of the court; once petitioner returned to prison, there would be little logic in an Adult Authority action continuing him on parole from the earlier commitment. Through the mechanism of the probation order, the trial court imposed an advance veto on the Adult Authority's decision to continue defendant at liberty and cornered the Adult Authority into a position where it had no practical alternative except to revoke parole. The probation order was an illegal interference with the Adult Authority's conduct of its functions.

■ The Supreme Court has declared that invalid conditions of probation are severable from valid conditions and do not affect the latter. (*In re Allen,* 71 Cal.2d 388, 394 [78 Cal.Rptr. 207, 455 P.2d 143].) ■ Here the invalidity lay at the heart of the probation order; without it, the order would have been quite different or might not have been forthcoming at all. The vice goes deeper than the probation order and deeper than the judgment, for the invalid order was the product of a recorded plea bargain to which defendant and his court-appointed counsel agreed. The plea bargain was tainted by an illegal condition. ■ Petitioner's participation in the plea bargain does not bar him from attacking it. (*People* v. *Dominguez,* 256 Cal.App.2d 623, 629 [64 Cal.Rptr. 290]; *People* v. *Blakeman,* 170 Cal.App.2d 596, 598 [339 P.2d 202]; cf. *In re Griffin,* 67 Cal.2d 343, 347-348 [62 Cal.Rptr. 1, 431 P.2d 625].) ■ Petitioner must be given an opportunity to withdraw a plea of guilty induced by the improper plea bargain. (*People* v. *West,* 3 Cal.3d 595, 610 [91 Cal.Rptr. 385, 477 P.2d 409].)

■ After the trial court had admitted petitioner to probation, the Adult Authority ordered his reinstatement on parole (which had been suspended earlier). The subsequent revocation of petitioner's probation and his prison commitment at the hands of the Los Angeles Superior Court then became the basis for the Adult Authority's action revoking parole. Invalidity of the superior court's revocation order results in invalidity of its commitment, which in turn nullifies the basis for parole revocation. Petitioner should be returned to *status quo ante.*

Let a writ of habeas corpus issue directing the Adult Authority to vacate its order of April 15, 1974, revoking petitioner's parole and its order of February 8, 1974, suspending parole. The Department of Corrections is ordered to return petitioner to the custody of the Los Angeles Superior Court. That court is directed to vacate its judgment and probation order dated November 23, 1973, its order revoking probation dated January 18, 1974, and its ensuing commitment of petitioner. The court is further di-

rected to provide counsel and to permit petitioner, should he be so advised, to withdraw his plea of guilty to the charge alleged by information in case Number A-433531 and thereafter to proceed in accordance with law.

Richardson, P. J., concurred.

**PARAS, J.**—I dissent. In my view the majority's holding is unjust both to the People and to the defendant.

The defendant challenges two penal procedures taken against him, the prison sentence of January 18, 1974, and the parole revocation of February 4, 1974. As I read the ruling of the majority, in effect all penal action against the defendant from November 23, 1973, forward has been vacated, both that of the court and of the Adult Authority. The defendant has been restored to "*status quo ante;*" which means that prosecution is to resume in court, with an opportunity to withdraw the guilty plea, and the Adult Authority may redetermine whether or not it will revoke parole.

The following chronology of some of the pertinent events is important.

5-28-68—Prison term of one year to life for second degree robbery commences.

7-10-69—Term is fixed at nine years by Adult Authority.

7- 7-71—Term is refixed at nine and one-half years.

11-15-71—Parole commences.

6-21-73—Parole is suspended (for not keeping parole officer informed of residence and not making self available for anti-narcotic testing program). Status is "Parolee at Large."

7-20-73—Defendant allegedly commits crime of possesion of heroin.

10-12-73—Information is filed charging offenses of 7-20-73.

11-23-73—Plea of guilty to the charge. Probation is granted by superior court.

12-14-73—Defendant's parole is reinstated. Term is refixed at nine and one-half years (to be discharged 10-4-75.)

1-18-74—Court revokes probation and sentences defendant to prison.

2- 4-74—Adult Authority revokes parole. Term is refixed at life.

With regard to the parole reinstatement the parole agent reported in writing to the Adult Authority on November 28, 1973, that (1) the de-

fendant was a parolee at large pursuant to his suspension of June 21, 1973; (2) he was convicted in the Los Angeles Municipal Court on September 21, 1973, of illegally using a needle (Bus. & Prof. Code, § 4144); (3) he was convicted in the Los Angeles Municipal Court on August 29, 1973, of petty theft; (4) on May 21, 1973, he was arrested for possession of barbiturates, but the city attorney's office (Los Angeles) did not prosecute because the otherwise convincing evidence was the product of an illegal search; (5) on July 11, 1973, he was arrested and charged with possession of heroin, and again prosecution was rejected on the ground that the otherwise convincing evidence resulted from an illegal search; (6) finally on July 20, 1973, he was arrested for possession of heroin for which he was convicted on November 23, 1973 (the present court matter).

Despite all this information regarding the defendant's activities during a three-month period of his parole, and despite full knowledge of the heroin conviction of November 23, 1973, incredibly, the parole agent's report recommended reinstatement on parole. *His recommendation was adopted* on December 4, 1973. The term was refixed at nine and one-half years, giving a release date of October 4, 1975. After December 14, 1973, the defendant did nothing to violate any condition of the newly reinstated parole (obviously, since he was incarcerated at all times thereafter). Once a parole is granted (or reinstated), a violation cannot be imposed unless it results from some specific action on the part of the defendant in violation of the parole conditions. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) There has been none here. Nor am I aware of any authority to the effect that one cannot be on parole while serving a collateral prison term.

Thus when the parole board on February 4, 1974, determined to revoke parole because of the resentencing of the trial court in the heroin possession matter, it performed an illegal act. Refixing of the sentence at life was totally improper and in violation of defendant's parole rights as vested on December 4, 1973. Whether the heroin conviction be upheld as I maintain it should, or reversed as the majority has done, there is nothing in the record to support a violation of parole and loss of parole rights from the date of reinstatement forward. Therefore I would hold that the Adult Authority's action of February 4, 1974, revoking parole, voiding the nine and one-half year term, and refixing the term at life, was invalid; I would order such action vacated and the parole reinstatement of December 4, 1973, still operative.

Turning to the superior court proceedings of November 23, 1973, I concur with the majority that the sentencing of November 23, 1973, in-

cluded what could normally be an illegal and invalid condition of probation. In this case however there was no impropriety other than one of meaningless form. In pursuit of my reasoning, I quote herein from the transcript of proceedings before the court on that date.

"It is the Court's understanding at this time that the defendant is presently in custody, being held for possible parole violation and return to State Prison, upon his having earlier been convicted of the charge of armed robbery, being fixed in the second degree and the defendant having previously been committed to the State Prison and thereafter being placed on parole; that there is a statement that has been made to the Court that in the event the defendant is convicted in this case and sentenced to more than six months in the County Jail, that a representation has been made that the defendant's parole would be violated and that the defendant would, in fact, be returned to the State Prison for a further period of incarceration in the State Prison upon the conviction of the armed robbery in the second degree.

"Accordingly, in view of those representations, this Court has stated to counsel that this Court would commit itself at this time that the Court would not commit the defendant to the State Prison at this time but would place the defendant upon summary probation at this time for a period of time. One of the conditions of that probation would be that the defendant serve the next year in the County Jail with credit for time served, but reserving to the Court the fact that one of the conditions of the probation will be that he be violated upon his parole and returned to State Prison.

"If he is not violated and returned to State Prison, this Court reserves the right at that time to revoke the probationary order and commit the defendant to the State Prison for the term prescribed by law, the Court's intention being at this time that the Court would sentence the defendant to State Prison, but merely suspend the execution of that sentence.

*"Does that fairly state the agreement?*

"MR. LEIMAN: *Yes, Your Honor.*

"THE COURT: *Mr. Gonzales—*

"THE DEFENDANT: *Yes.*

"THE COURT:—*did you hear what the Court said with respect to this case?*

"THE DEFENDANT: *Yes, sir.*

"THE COURT: *Are you in agreement with this?*

"THE DEFENDANT: *Yes.*

"THE COURT: *Do you understand if they don't ship you back there, that I will?*

"THE DEFENDANT: *Yes.*

"THE COURT: *Is that an agreeable disposition of the case with you?*

"THE DEFENDANT: *Yes, it is.*"

It is readily obvious from the foregoing that the majority correctly concluded that the plea of guilty and the sentencing were the result of a plea bargain. Were this not so I would agree, that the invalid condition contaminates the sentence and requires either its vacation or its correction by striking the invalid condition. But the very fact that there was an agreement makes this otherwise illegal condition valid. It is obvious that the court truly intended that the defendant go to prison for the crime of possession of heroin.[1] But the court was prepared to forego such a sentence if defendant was imprisoned for parole violation; a simple prison sentence was deemed adequate. The form of disposition selected was imposition of a prison sentence, suspension of execution thereof, and probation, provided that parole was violated. The court could just as easily have ordered the prison sentence executed and if the Adult Authority later did in fact violate parole, it could then recall the defendant and grant him probation. Or the court could have obtained a waiver and simply continued the sentencing for an additional 30 days to await the outcome of the Adult Authority's consideration on the suspended parole. The court merely chose an erroneous form to achieve its expressed intention.

Not only did the court intend that the defendant go to prison but the defendant intended that he go to prison as did defendant's counsel and as did the prosecuting attorney. That is what came out of the plea bargain. That the defendant clearly understood what was going to happen is undisputedly demonstrated by the colloquy between himself and the court.

Under these circumstances, the defendant waived any defect in the form of sentencing procedure. But for the independent action of the Adult Authority, he received the full benefit of the agreement; in fact he received the better of the two alternatives contemplated by the agreement. If he served prison time on the parole violation, he would be back doing a

---

[1]The preliminary hearing transcript shows that the defendant was actually engaging in sales of heroin (Health & Saf. Code, § 11352) and was doing so in connection with the offense for which he was arrested—nevertheless he was charged only with possession and not with sale or offer to sell. (Health & Saf. Code, § 11350.)

maximum life term. By going to prison on the possession of heroin conviction he is doing a maximum of 10 years.

With the defendant knowing exactly what result would obtain and with that precise result ensuing, I see no conceivable justice in vacating the entire court proceeding and forcing a stale trial upon the People. Instead, justice demands that we simply effectuate the plea bargain. I am of the view, as is the majority, that the integrity of a plea bargain should be preserved to the maximum extent possible; the least impropriety should void the bargain, if it is to defendant's detriment. Subject to this limitation however, both sides should be able to rely upon the final agreement. The People have as much right to justice in this context as does the defendant. As said by Mr. Justice Cardozo in *Snyder* v. *Massachusetts* (1933) 291 U.S. 97, 122 [78 L.Ed. 674, 687, 54 S.Ct. 330, 90 A.L.R. 575], ". . . justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament."

The defendant here suffered no detriment as a result of the court's action and has no complaint. Knowing well the full consequences of the plea bargain, he joined in whatever error of form was committed and in fact waived it. He did so intelligently. There simply is not and cannot be any illegality or impropriety of court action where everything that everyone in the courtroom agrees and expects to happen (none of which is inherently evil), in fact happens. The detriment to defendant, and his cause for complaint, is not the result of any action of the court but of the Adult Authority. My preferred disposition would correct that wrong. I would therefore let substance triumph over form and uphold the action of the trial court, thus leaving intact the court's prison sentence.