[No. H009007. Sixth Dist. Nov. 5, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
YVETTE FAATILIGA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2(a), 2(b), 3(a), 3(b), 3(b)(1), 3(b)(2), 3(b)(3) and 3(b)(4).

**COUNSEL**

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver, John H. Deist and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PREMO, J.**—Defendant Yvette Faatiliga appeals her conviction of one count of possession of cocaine. (Health & Saf. Code, § 11350, subd. (a).) After her motion to suppress evidence (Pen. Code, § 1538.5) was denied, defendant entered a conditional plea to a simple possession charge, reduced from possession of cocaine for sale (Health & Saf. Code, § 11351.5). The trial court placed defendant on probation with conditions, including one that she reimburse the County of Santa Clara (hereafter, County) for certain costs including $200 for attorney fees. On appeal, defendant contends that: (1) the trial court erred in denying her motion to suppress, and (2) even if her conviction should not be reversed on that basis, she cannot be required to reimburse County for attorney fees and other costs as conditions of probation. For the reasons stated below, we reverse the attorney fees probation condition, remand for rehearing on certain other probation conditions, and affirm the judgment as modified.

## 1. FACTS

On the afternoon of April 3, 1991, a group of San Jose police officers, including Tom Martuscelli and Nick Battaglia, executed search warrants at apartments 6 and 8 of a complex located at 1298 Tripp Avenue in San Jose. Officers believed that the occupants of these two apartments were selling drugs and using a white Ford Bronco and a red pickup truck in this activity.

That morning, Officer Daniel Fino was assigned to assist in the search. Fino explained to the other officers at the presearch briefing that two or three weeks earlier he had discovered in an unrelated investigation that the people living in apartment 9 at the same complex were selling drugs also. Fino repeated what his reliable informant had told him: that the occupants of apartment 9 had a "safe house" at another location where they stored most of the drugs, and that they drove a red pickup truck and a blue 1980's Ford Escort. This informant had given Fino accurate information in 30 or 40 narcotics cases over the previous 2½ years. Although Fino mentioned that his information related to apartment 9, Martuscelli understood that it related to apartments 6 and 8.

The officers began searching the two apartments about 1:30 p.m in the afternoon. One man was arrested, taken into custody, and placed in Battaglia's undercover car, parked in the complex parking lot. At 3 p.m. the officers were preparing to leave when defendant drove up in a blue 1980's Ford Escort and parked near Battaglia's car.

Defendant got out of her car as Martuscelli remembered Fino's statement that such a car was involved in drug trafficking at the complex. He approached defendant, told her he was a San Jose police officer, and asked her what she was doing there. Defendant, whose baby was in a car seat in the front passenger seat, said she was visiting a friend in apartment 23. Martuscelli asked if he could see her identification, and she moved as if to get her purse out of the car. Martuscelli asked if it would be all right for him to get the purse, for officer safety reasons, and defendant assented.

Martuscelli got the purse and handed it to defendant, who showed him her identification. He stated that officers had been searching several apartments in the complex for drugs, and they believed a blue Ford Escort was associated with those apartments. Defendant said she did not use, sell, or possess any drugs. Martuscelli asked if he could check her purse, and she said "okay" or "go ahead." In her purse, he found a baggie containing several rocks of crack cocaine, and an envelope containing $450 in cash, three $50 bills and fifteen $20 bills. The officer then searched the car, finding another

baggie containing bigger rocks of cocaine in the console between the front seats. Martuscelli estimated that it was two minutes from the time he approached defendant until he found the drugs in the purse, and that the entire transaction including the search of the car took about five minutes.

Defendant moved to suppress the drugs as the fruit of an illegal detention, and the trial court denied the motion finding there had been a consensual encounter. The trial court found defendant's testimony, which differed from Martuscelli's, to be not credible. After accepting defendant's conditional plea, the trial court placed defendant on probation on condition, among others, that she pay a restitution fine and that she reimburse County: $100 for a drug program fee, $50 laboratory fee, up to $15 probation supervision fee per month, and $200 for attorney fees.

On appeal, defendant contends that the trial court erred in denying her motion to suppress. Assuming the court did not err in denying the suppression motion, defendant claims the probation conditions regarding reimbursement were improperly imposed.

## 2. SUPPRESSION MOTION*

*(a), (b)*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## 3. PROBATION CONDITIONS

At sentencing, defendant was placed on probation with conditions. The trial court enumerated several conditions and then stated: "She's ordered to pay a restitution fine and a drug program fee, each in the sum of one hundred dollars, laboratory fee in the sum of fifty dollars, supervision fee not to exceed 15 dollars monthly, and attorney's fee in the sum of two hundred dollars." Defendant objects to these conditions on appeal, contending the trial court failed to make the necessary determination that she was able to pay, and also that the attorney fee condition is otherwise invalid. The People contend defendant waived the issue by failing to raise it in the trial court.

*(a)-(b)(4)*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote, *ante*, page 1276.

*(5)   Reimbursement of Attorney's Fees as Probation Condition*

■   Imposing reimbursement of attorney fees as a condition of probation is absolutely prohibited in California courts. (*In re Elizabeth S.* (1982) 138 Cal.App.3d 450, 454 [188 Cal.Rptr.2d]; *In re Allen* (1969) 71 Cal.2d 388, 391-392 [78 Cal.Rptr. 207, 455 P.2d 143].) The Supreme Court so held in *In re Allen, supra,* 71 Cal.2d 388. While the United States Supreme Court criticized that case when upholding an Oregon statute permitting collection of attorney fees from defendants who can afford to pay, *In re Allen* has not been overruled. (*Fuller* v. *Oregon* (1974) 417 U.S. 40, 51-52 [40 L.Ed.2d 642, 653-654, 94 S.Ct. 2116]; *People* v. *Amor* (1974) 12 Cal.3d 20, 25-26 [114 Cal.Rptr. 765, 523 P.2d 1173].) The statute setting forth a procedure for obtaining an order to pay attorney fees, enforceable as a civil judgment, is constitutional. (*People* v. *Amor, supra,* 12 Cal.3d at pp. 25-27.) The distinction between a civilly enforceable order and a probation condition is that defendant may be imprisoned for violating the probation condition. (*Id.* at p. 25.) The government may not exact a penalty for the exercise of a constitutional right. (*In re Allen, supra,* 71 Cal.2d at pp. 391-392.) Freedom from payment of attorney fees as a condition of probation is founded on the California Constitution's guarantee of the right to counsel in criminal proceedings. (Cal. Const., art. I, § 15; *In re Elizabeth S., supra,* 138 Cal.App.3d at p. 454, fn. 2.)

The trial court could have imposed an attorney fee order by following the statutory procedure outlined in Penal Code section 987.8. The court must give notice to defendant that he or she may be required to pay prior to the furnishing of legal assistance. (Pen. Code, § 987.8, subd. (f).) Then, after the criminal proceedings are completed (and not as a part of sentencing), the court may hold a hearing to determine the defendant's present ability to pay attorney fees. (Pen. Code, § 987.8, subd. (b).) The court may hold one additional hearing, in its discretion, within six months of the completion of the criminal proceedings. (*Ibid.*)

In this case, the trial court impermissibly imposed reimbursement for attorney fees as a condition of probation. Statutorily outlined procedure was not followed, nor was defendant's ability to pay ever determined. There is no indication that defendant was given notice prior to the furnishing of legal services that she might have to pay for those legal services. Since more than six months have elapsed since the conclusion of the criminal proceedings, it is too late for the court to hold a hearing under Penal Code section 987.8. (*People* v. *Spurlock* (1980) 112 Cal.App.3d 323, 329 [169 Cal.Rptr. 320].) The attorney fee order must be stricken. (*In re Elizabeth S., supra,* 138 Cal.App.3d at p. 455.)

## 4. DISPOSITION

The trial court's order denying the motion to suppress is affirmed. The judgment is modified by striking the probation condition requiring defendant to pay attorney fees. (Pen. Code, § 1260.) The orders that defendant must pay a drug program fee and a probation supervision fee are reversed and remanded for rehearing consistent with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Capaccioli, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied December 2, 1992, and petitions of both respondent and appellant for review by the Supreme Court were denied February 10, 1993.