Filed 7/17/14  In re A.B. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | H039890 (Santa Clara County Super. Ct. No. 12-JV-39421E) |
| THE PEOPLE, Plaintiff and Respondent, v. A.B., Defendant and Appellant. | |
| In re J.S., a Person Coming Under the Juvenile Court Law. | H040054 (Santa Clara County Super. Ct. No. 3-13-JV40062A) |
| THE PEOPLE, Plaintiff and Respondent, v. J.S., Defendant and Appellant. | |

## INTRODUCTION

The juvenile court found that minors A.B. and J.S. committed attempted robbery (Pen. Code,[1] §§ 664/211-212.5, subd. (c)) and that J.S. committed battery (§§ 242-243, subd. (a)). The court also sustained the allegation that J.S. personally used a deadly weapon in the commission of the attempted robbery (§§ 667 & 1192.7). On appeal, J.S. contends that the punishment imposed for battery must be stayed pursuant to section 654. A.B. challenges the juvenile court's findings that he aided and abetted the attempted robbery on insufficiency of evidence grounds. A.B. also argues, and the Attorney General concedes, that the dispositional order must be modified to clarify that he is not personally responsible for attorney fees.

For the reasons set forth below, we will modify the dispositional order as to J.S. to stay the punishment for battery. We will also modify the dispositional order as to A.B. to clarify that A.B. is not personally liable for attorney fees. As so modified, the dispositional orders are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 3, 2013, the district attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging that A.B. committed attempted robbery in the second degree (§§ 664/211- 212.5, subd. (c)). On May 17, 2013, the district attorney filed a petition, also under Welfare and Institutions Code section 602, subdivision (a), alleging that J.S. committed attempted robbery in the second degree (§§ 664/211- 212.5, subd. (c), misdemeanor battery (§§ 242- 243, subd. (a)), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1)). The petition also alleged that J.S. personally used a deadly weapon in the commission of the attempted robbery (§§ 667 & 1192.7).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

*The Underlying Offense*

At the joint contested jurisdictional hearing, the victim, C.M., testified as to the events that led up to the charges against A.B. and J.S. On May 1, 2013, C.M., who was a 16 year old student at Independence High School, was walking home from school on the Penitencia Creek Trail. As he passed the Interstate 680 highway overpass, C.M. saw three individuals standing approximately five feet away from him. One of the individuals, A.B., asked C.M. if he had cash or a lighter. C.M. responded, " 'I'm sorry. . . . I don't have any cash or a lighter.' "

C.M. continued walking. About 15 seconds later, one of the other individuals, J.S., approached C.M. J.S. demanded that C.M. give him all his "stuff." C.M. asked, " 'Why?' " and said " 'I don't want to cause any trouble.' " J.S. then pulled out a knife. C.M. tried to run, but J.S. blocked him. J.S. pulled on C.M.'s backpack and then punched C.M. in the lip, causing it to bleed. C.M. recalled that J.S. put the knife away before J.S. punched him. During the entire time J.S. was with C.M., A.B. and the third individual watched from approximately half a kilometer away. C.M. testified that he could still see A.B., even though he was "far away."

After J.S. punched C.M., C.M. ran away. C.M. testified that all three individuals chased after him.[2] C.M. stopped and showed them his phone and said that he was going to call the police. At some point, the three individuals stopped chasing C.M., and C.M. called the police.

---

[2] On re-direct examination, C.M. provided some contradicting testimony. The prosecutor asked "at some point all three of them were together again; is that right?" C.M. responded "No. . . . Guy No. 2 . . . tried to rob my stuff while guy No. 1 and 3 was, um was together far away." The prosecutor asked, "And then after that you told us that they chased you; is that right?" C.M. responded, "No. They didn't chase me, they were watching till [*sic*] what I'm doing, but I didn't do anything else. I just keep on running away from them. If I stop—I just stopped they try to go after me, but I just run back away from them . . . ."

After C.M. called the police, Officer Eric Rosengren and another officer responded to the scene of the incident. C.M. went with the officers to try to find the three individuals. The police located A.B. in front of his apartment. C.M. was able to identify him as the individual who had asked him for money or a lighter. When Officer Rosengren first questioned A.B., A.B. acted as if he had no idea why the police were talking to him and as if he did nothing wrong. A.B. then changed his story and admitted that he had been with two classmates during the attempted robbery. A.B. told the officers that he was a reluctant participant and had tried to talk his classmates out of the robbery. A.B. denied that he asked C.M. for money.

Days after the incident, Detective Barbara Melloch met with C.M. to conduct a photographic lineup. C.M. identified J.S. as one of the perpetrators. Detective Melloch interviewed J.S. about the incident at the Penitencia Creek Trail. J.S. initially said that he was just there, and he denied doing anything. Detective Melloch told him that she knew he was lying. J.S. then admitted that he took part in the offense. J.S. told the detective that he took a knife from a picnic table and used it to rob C.M. J.S. also admitted to hitting C.M., but he claimed that he accidentally hit him during a struggle. J.S. said that he was with "A.J."[3] and "Sneezy" at the time of the incident.

### *A.B.'s Prior Offense*

At the jurisdictional hearing, the prosecution introduced evidence of A.B.'s prior robbery in order to prove a common plan or scheme. J.A., the victim of A.B.'s prior robbery, testified that in November 2012, he was walking home from school on the Penitencia Creek Trail. J.A. was 15 years old at the time and was a student at Independence High School. As he was walking around the highway overpass, J.A. encountered a group of about five individuals. J.A. recognized one of the individuals as A.B. from middle school. A.B. approached J.A. and asked " 'Do you remember me?' "

---

[3] A.B. is also known as "A.J."

J.A. replied that he remembered him. A.B. told J.A. " 'I was going to rob you but I know who you are so I'm not going to . . . ." A.B. then asked J.A. if he had anything in his backpack. J.A. handed over his backpack, and A.B. handed it back once he realized there was nothing but school work inside. A.B. then asked what was in J.A.'s pockets. J.A. had an iPhone, but he refused to give it to A.B. A.B. then "swept out [J.A.'s] leg numerous times" until he fell. A.B. grabbed the iPhone and said he was going to use it to call his mother. A.B. returned the phone to J.A., but shortly thereafter, A.B. ran after J.A. to take the phone a second time. J.A. took the phone and ran away. A couple months later, J.A. used the GPS locator to recover the phone at a flea market.

### The Sustained Petitions

At the conclusion of the jurisdictional hearing, the juvenile court sustained the allegations of the petitions and found that A.B. and J.S. committed attempted robbery and that J.S. committed misdemeanor battery. The court also found true the special allegation that J.S. personally used a deadly weapon in the commission of the attempted robbery. Pursuant to the prosecution's motion, the court dismissed the allegation that J.S. resisted a police officer.

The juvenile court declared J.S. a ward of the court and ordered him to serve 30 days on the Electronic Monitoring Program (EMP). The court placed J.S. on probation with various terms and conditions, and it set the maximum time of confinement at three years two months. The court also declared A.B. a ward of the court and ordered him to serve 90 days on EMP. The court placed him on probation with various terms and conditions, and it set the maximum time of confinement at seven years four months. The court also noted that "[A.B.'s] attorney's fees will be set at $200 with four appearances."

DISCUSSION

### A. The Punishment for J.S.'s Battery Offense Must Be Stayed

J.S.'s sole contention on appeal is that the juvenile court violated section 654 when it imposed a separate punishment for his battery offense. J.S. argues that he cannot

5

be punished for both attempted robbery and battery because the crimes were part of an indivisible course of conduct with one objective. J.S. asserts that the correct remedy would be to stay the punishment for battery and to modify the maximum time of confinement accordingly.[4]

The Attorney General argues that separate punishment for the battery offense was proper, as it was a separate "gratuitous violent act" committed after the attempted robbery had ended. According to the Attorney General, the attempted robbery concluded once J.S. put away the knife. Additionally, the Attorney General contends that the juvenile court could have inferred that J.S. had a separate objective for committing battery such as punching "out of anger, or to prevent or intimidate C.M. from calling the police."

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." The purpose of the statute is to ensure that the punishment is commensurate with the defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*).)

"The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People v. Bauer* (1969) 1 Cal.3d 368, 376.) "On the other hand, if the evidence discloses that a defendant

---

[4] Although J.S. did not object to the juvenile court's imposition of sentence on section 654 grounds, failure to make such an objection does not waive the claim unless the sentence is imposed pursuant to a plea agreement. (*People v. Hester* (2000) 22 Cal.4th 290, 296.)

entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Perez, supra,* 23 Cal.3d at p. 551, fn. omitted.)

"Whether section 654 applies in a given case is a question of fact for the juvenile court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) On appeal we defer to express or implicit determinations that are based upon substantial evidence. (Cf. *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

In imposing a concurrent term for battery, the juvenile court implicitly found that defendant had a separate objective to commit the battery. However, the evidence here is insufficient to support such a finding. According to C.M., J.S. demanded that C.M. give him all his "stuff" and pulled out the knife shortly thereafter. C.M. attempted to leave, but J.S. blocked him. J.S. then pulled on C.M.'s backpack and punched C.M. in the lip. After the punch, C.M. ran away. Although C.M. testified that J.S. had put away the knife before the punch, nothing in these facts support the Attorney General's assertion that the attempted robbery had concluded immediately after J.S. put the knife away. Rather, the punch occurred as a part of the course of the attempted robbery and was not a separate and distinct act. The facts show that when J.S. threw the punch, he had pulled on C.M.'s backpack, presumably to try to forcefully retrieve C.M.'s possessions. Thus, the attempted robbery was ongoing when J.S. committed battery, and it only concluded after the three individuals stopped chasing C.M. Thus, the facts support that J.S. committed battery with the intent to take away C.M.'s property.

Accordingly, as section 654 prohibits multiple punishment for the attempted robbery and the battery, the proper remedy is to stay the terms imposed on the battery count and to modify the maximum time of confinement. (See *People v. Pearson* (1986) 42 Cal.3d 351, 358-359; *People v. Lopez* (1992) 11 Cal.App.4th 844, 849.)

7

The juvenile court set the maximum time of confinement for J.S. at three years two months. Although the court did not explain its calculation of the maximum term, it is apparent that it set the term in accordance with Welfare and Institutions Code section 726 and Penal Code section 1170.1. Welfare and Institutions Code section 726, subdivision (d) provides that if "the court elects to aggregate the period of physical confinement on multiple counts . . . the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code." Section 1170.1, subdivision (a) provides, in relevant part: "the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes . . . . The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed . . . ." Here, it is apparent that the juvenile court followed this statutory formula and calculated the maximum time of confinement by adding three years, which is the upper term for attempted robbery (see §§ 213 & 18), plus two months, which is one-third of the middle term for the subordinate misdemeanor battery (see § 243).

Because the juvenile court imposed a two month term for the misdemeanor battery offense, we will stay the two month term pursuant to section 654 and reduce the maximum time of confinement to three years.

## B. There Was Sufficient Evidence of A.B's Attempted Robbery

The juvenile court found that A.B. had aided and abetted in the attempted robbery of C.M. On appeal, A.B. contends that there was insufficient evidence to support the court's finding. A.B. argues that his conduct prior to the incident (i.e., asking C.M. for cash or a lighter) was innocent, that he stood far away from J.S. during the attempted

8

robbery, that there was no evidence that he was a "lookout," and that there was insufficient evidence that he chased C.M.  Additionally, A.B. argues that the evidence of his prior robbery "lends little support to the common plan theory."

When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we determine whether there is substantial evidence, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  In making this determination, we review the whole record in the light most favorable to the judgment, we draw all reasonable inferences from the evidence that support it, and we presume the existence of every fact the trier of fact could reasonably deduce from the evidence.  Conversely, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319-320; *People v. Staten* (2000) 24 Cal.4th 434, 460; *People v. Jones* (1990) 51 Cal.3d 294, 314; *People v. Johnson* (1980) 26 Cal.3d 557, 577-578.)

" 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (*Campbell*), quoting *People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)  Neither mere presence when a crime is committed, nor failure to prevent it, is sufficient.  (*Campbell, supra,* 25 Cal.App.4th at p. 409.)  It is often said that various " 'factors' " may be " 'considered' " in determining whether a defendant's conduct constituted aiding and abetting, and that these include " 'presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Ibid.,* quoting *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.)

Based on the record in this case, there was sufficient evidence to support the juvenile court's finding that A.B. aided and abetted the robbery by selecting the victim, acting as lookout, or as otherwise standing by in preparation to provide aid to J.S.  (See

9

*People v. Silva* (1956) 143 Cal.App.2d 162, 169 [person who is present "to serve as a lookout . . . is a principal in the crime committed"]; *People v. Moore* (1953) 120 Cal.App.2d 303, 306 [presence as a lookout is sufficient to aid and abet a crime]; *People v. Luna* (1956) 140 Cal.App.2d 662, 665 [defendant aided and abetted an assault where he "stood by prepared to take a hand" in a fight involving a codefendant and "aggressively entered it when he thought the proper time had arrived"].)

A factfinder could reasonably conclude that A.B. "did not independently happen by the scene of the crime." (*Campbell*, *supra*, 25 Cal.App.4th at p. 409.) A.B. was with J.S. and another individual before the attempted robbery occurred. A.B. had approached C.M. to ask if he had cash or a lighter, and then only 15 seconds later, J.S. confronted C.M. Additionally, during the time J.S. confronted C.M., A.B. and the other individual remained in sight and watched the confrontation take place. Since there was no evidence that A.B. was surprised by or attempted to interfere with J.S.'s conduct, the court could have reasonably concluded that A.B. knew of the plan ahead of time and agreed to serve as a lookout or as a back-up in the event that J.S. needed assistance. This inference is further bolstered by A.B.'s admissions to the police. He admitted that he was a reluctant participant and that he tried to convince his friends out of the robbery. His admissions show that he knew of the plan to rob C.M. ahead of time and that he had agreed to take some part in it. Furthermore, there was also evidence that A.B. chased C.M. when the attempted robbery failed. We note that though there was some ambiguity with C.M.'s testimony about whether A.B. chased C.M.,[5] any evidentiary disputes must be resolve in favor of the judgment. (*People v. Johnson*, *supra*, 26 Cal.3d at pp. 577-578.)

Moreover, the evidence of A.B.'s prior robbery also supported the juvenile court's finding that he aided and abetted the instant robbery, as there were many similarities between the two robberies. The victim in both crimes had been walking home on

---

[5]  See fn. 2, *ante*.

10

Penitencia Creek Trail after school, and the offense occurred around the same location (i.e., under the I-680 overpass) and the same time of day. As with the present case, A.B. had been with a group of other individuals when he approached the victim, who was walking alone. Also similar to the instant case, A.B. had asked the victim if he had anything in his possession before he or another group member used force. Given all these similarities to the prior robbery, a plausible inference was that A.B. was involved in a plan or scheme to execute a similar robbery in this case.

Accordingly, the evidence, taken together, was sufficient for the juvenile court to reasonably infer that A.B. had knowledge of the attempted robbery prior to the commission, had the intent to assist J.S. in committing the offense, and had affirmatively played a role in the crime by selecting the victim and acting as a look out or a back-up for J.S.

### C. *Using the Appropriate Standard of Proof, the Juvenile Court did not Err in Finding that A.B. Knew the Wrongfulness of His Conduct*

On appeal, A.B. contends that the juvenile court erred in finding that he understood the wrongfulness of his conduct under section 26. First, A.B. contends that the court erred by using a clear and convincing evidence standard rather than a beyond a reasonable doubt standard to find that he knew the wrongfulness of his conduct. While he acknowledges that our Supreme Court in *In re Manuel L.* (1994) 7 Cal.4th 229 (*Manuel L.*) held that the clear and convincing evidence standard is the appropriate standard of proof, he maintains that *Manuel L.* is "no longer good law." Second, under a beyond a reasonable doubt standard, he argues that the evidence is insufficient to prove that he knew the wrongfulness of his act.

Under section 26, "[a]ll persons are capable of committing crimes except those belonging to the following classes: [¶] One—Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." Notwithstanding the presumption of section 26, the juvenile

11

court in this instance determined that "there is sufficient evidence, clear and convincing proof, that's been adduced to show that the minor knew the wrongfulness of his act or the criminal charge." Specifically, the court mentioned "the testimony of Officer Rosengren, that the minor denied doing anything wrong, changed his story, tried to stop or talk the others out of robbery. There's evidence of the chasing of the victim that the minor's denial of knowledge, denial asking for money, conflicting statements. And then the other issue is the court case on the issue of the 1101(b), that is, the plan, the scheme and the flight. All of the evidence shows clear and convincing proof that the minor was involved in the alleged acts."

1. **The Juvenile Court Properly Applied the Clear and Convincing Evidence Standard**

A.B. first contends that the juvenile court should have applied a proof beyond a reasonable doubt standard to determine whether A.B. knew the wrongfulness of his act.

In *Manuel L.,* the California Supreme Court determined that the clear and convincing evidence standard applies to a section 26 finding. (*Manuel L., supra,* 7 Cal.4th at p. 232.) In doing so, the court distinguished the nature of this requirement from the elements of a criminal offense. "The issue of the juvenile's capacity remains, as historically it has been, subject to a distinct standard of proof. Penal Code section 26, subdivision One, continues to define the prosecution's burden of proving the juvenile's capacity in section 602 proceedings. Section 701 establishes its burden with respect to all elements of the offense necessary to a finding that the minor violated any law defining a crime." (*Id.* at p. 236.) The court reasoned that "criminal capacity is not an element of the offense and thus is not the type of fact [that] requires proof beyond a reasonable doubt. Rather, it is akin to the question of sanity, which due process does not require the prosecution to prove beyond a reasonable doubt." (*Id.* at p. 238.)

A.B. acknowledges that this court would ordinarily be bound to the holding in *Manuel L.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

12

Nonetheless, he contends that *Manuel L.* is no longer valid in light of the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). In *Apprendi,* the United States Supreme Court held that a fact (other than a prior conviction) that increases the maximum penalty for an offense must be proved to a jury beyond a reasonable doubt, but the court explicitly did not consider "the State's power to manipulate the prosecutor's burden of proof by, for example, relying on a presumption rather than evidence to establish an element of an offense, [citations], or by placing the affirmative defense label on 'at least some elements' of traditional crimes." (*Id.* at p. 475.)

A juvenile's capacity to commit a criminal offense is not an element of a criminal offense, nor is it a sentencing factor that increases the maximum penalty for an offense. As the California Supreme Court explained in *Manuel L., supra,* 7 Cal.4th at page 238 a juvenile's capacity to commit a criminal offense (§ 26, subd. One) is akin to an adult's sanity (§ 26, subd. Two). In *People v. Ferris* (2005) 130 Cal.App.4th 773 (*Ferris*), the defendant claimed that *Apprendi* applied to the issue of sanity and required the prosecution to prove sanity beyond a reasonable doubt. In *Ferris,* the jury had been instructed that the defendant had the burden of proving by a preponderance that he was insane. (*Id.* at p. 777.) The Fifth District Court of Appeal rejected the defendant's attempt to characterize sanity as an element of the offense for *Apprendi* purposes. (*Id.* at p. 780.)

Sanity, like a juvenile's capacity to commit a criminal offense, concerns the individual's ability to understand the wrongfulness of the criminal act at the time of its commission. (*Ferris, supra,* 130 Cal.App.4th at p. 780; § 26.) Since the issue of sanity is not an element of the offense for *Apprendi* purposes, it follows that a juvenile's capacity is not an element of the offense for *Apprendi* purposes. Therefore, *Apprendi* does not require that capacity be proved beyond a reasonable doubt. Thus, we remain bound by

13

*Manuel L.* (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455), and we conclude that the juvenile court applied the correct standard of proof.

## 2. There was Sufficient Evidence that A.B. Knew the Wrongfulness of his Conduct

Applying the clear and convincing evidence standard of proof, the juvenile court did not err in deciding that A.B. knew the wrongfulness of his conduct. "On appeal, we must review the whole record in the light most favorable to the judgment and affirm the juvenile court's findings that the minor understood the wrongfulness of his conduct if they are supported by 'substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. [Citations.]' [Citations.]" (*In re James B.* (2003) 109 Cal.App.4th 862, 872 (*James B.*).)

"In determining whether the minor knows of the wrongfulness of his conduct, the court must often rely on circumstantial evidence such as the minor's age, experience, and understanding, as well as the circumstances of the offense, including its method of commission and concealment. [Citations.] Generally, the older a child gets and the closer he approaches the age of 14, the more likely it is that he appreciates the wrongfulness of his acts. [Citations.]" (*James B., supra,* 109 Cal.App.4th at pp. 872-873.)

At the time of the offense, A.B. was 13 years and 11 months old. A.B. was very close to the age of 14, and thus, it was more likely that he understood the wrongfulness of his actions. (*James B., supra,* 109 Cal.App.4th at pp. 872-873.)

When A.B. was questioned by the police, he initially acted as if he had no idea why the police were contacting him and as if he had done nothing wrong. He then changed his story and admitted being at the scene of the attempted robbery and being a reluctant participant in the offense. Additionally, he denied ever asking C.M. if he had any money, which contradicted C.M.'s testimony that A.B. asked him whether he had

14

any cash or a lighter. A.B. also admitted that he tried to convince his friends out of the robbery. A.B.'s initial denial, his conflicting statements, and his admission regarding his efforts to convince his friends out of the offense indicate that he was aware that his part in the attempted robbery was wrong.

Moreover, as the juvenile court found, the evidence of A.B.'s prior robbery also demonstrates that he understood that committing the present offense was wrong. A.B. was prosecuted and was found delinquent for his prior robbery. Having been prosecuted and punished for a robbery that had a similar plan and design as the attempted robbery here (see *ante*, at p. 11), the juvenile court could have reasonably inferred that A.B. appreciated the wrongfulness of his participation in the present offense.

Given A.B.'s age, the circumstantial evidence of his behavior and his conduct, and his involvement in a prior robbery similar to the one at issue here, there is sufficient evidence to support a finding that A.B. understood the wrongfulness of aiding and abetting the attempted robbery.

### D. *The Dispositional Order Should Clarify the Attorney Fees Provision*

Lastly, A.B. argues that the juvenile court was not authorized to order him to reimburse the public defender. A.B. asserts that the order must be modified to clarify that his parents, and not A.B. personally, are responsible for the attorney fees because (1) requiring a minor to pay is unauthorized by law, (2) there was no finding of an ability to pay, and (3) such an order violates equal protection principles. The Attorney General concedes that the dispositional order should be clarified to state that A.B. is not personally liable for the attorney fees. We accept this concession.

Under Welfare and Institutions Code section 903.1, subdivision (a), "[t]he father, mother, spouse, or other person liable for the support of a minor, the estate of that person, and the estate of the minor, shall be liable for the cost to the county or the court, whichever entity incurred the expenses, of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court." The statute makes no provision for

15

imposing personal liability on the minor for the attorney fees incurred in representing him or her in the juvenile proceeding.  Our Supreme Court has explained that Welfare and Institutions Code section 903.1 "is merely declarative of the parents' preexisting obligation to provide reasonable and necessary support to their minor children, and to reimburse third persons providing that support upon the parents' failure to do so. [Citation.]" (*In re Ricky H.* (1970) 2 Cal.3d 513, 521.)  Moreover, the imposition of attorney fees as a condition of probation is prohibited in both adult criminal cases and in juvenile delinquency proceedings.  (*People v. Faatiliga* (1992) 10 Cal.App.4th 1276, 1280, disapproved on other grounds in *People v. Flores* (2003) 30 Cal.4th 1059, 1068; *In re Elizabeth S.* (1982) 138 Cal.App.3d 450, 454.)

At the dispositional hearing, the juvenile court ordered that "[t]he minor['s] attorney's fees will be set at $200 with four appearances."  Though it is not so clear from the record, it appears that the order for attorney fees was a condition of A.B.'s probation. The record does not specifically mention whether the court ordered A.B. personally responsible for these attorney fees.  However, the probation order states generally:  "The minor and his parents are jointly and severally responsible for the payment of fines, penalty assessments, and/or restitution, as ordered by the Court."

As the dispositional order stands, the order may be construed as imposing personal liability on A.B. for reimbursement of attorney fees.  As explained above, imposing such personal liability on a minor would be unauthorized by law.  To avoid any ambiguity, we shall modify the dispositional order as to A.B. to clarify that the minor is not personally responsible for reimbursement of attorney fees incurred in the proceedings.[6]

---

[6] Because we modify the order to clarify that A.B. is not personally liable for the attorney fees, we need not address his arguments regarding the ability to pay finding and the equal protection violation.

16

**DISPOSITION**

In appeal No. H040054, the penalty for misdemeanor battery is stayed. The dispositional order is modified to state that J.S.'s maximum time of confinement is three years.

In appeal No. H039890, the dispositional order is modified to clarify that A.B. is not personally liable for the reimbursement of his attorney fees assessed by the juvenile court.

As so modified, the orders are affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.

17