[Crim. No. 6011. Fifth Dist. Dec. 30, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
TOM L. GREEN, Defendant and Appellant.

**COUNSEL**

Eric L. Henrikson, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Rober E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—In action No. 272278-3, appellant was charged with murder and robbery, with the use of a firearm in both offenses. Pursuant to plea bargain, appellant pled guilty to voluntary manslaughter, and the use allegation and robbery count were dismissed.

In action No. 270549-9, appellant was charged with robbery, while being armed with a firearm. He pled guilty to robbery, pursuant to plea bargain which provided the arming allegation would be stricken and he would receive a sentence concurrent with that imposed for the voluntary manslaughter.

\*Before Brown (G. A.), P. J., Hanson (P. D.), J., and Stanton, J.†

†Assigned by the Chairperson of the Judicial Council.

Appellant was sentenced to prison for the six-year upper base term on the manslaughter with a concurrent three-year middle base term on the robbery. He now complains the sentencing judge considered improper aggravating factors in imposing the upper base term on the manslaughter.

The sentencing hearing occurred November 23, 1981. The judge had read and considered a probation officer's report (RPO) dated November 16, 1981, which recommended the middle base term for the manslaughter plus a consecutive term for the robbery. We briefly summarize the pertinent facts.

## The Robbery

On the evening of December 14, 1980, two black males entered a Seven-Eleven store where a female clerk was working alone. As the shorter man walked behind the counter, the taller man pulled a gun, pointed it at the clerk, and ordered her to open the cash register. She complied, and the shorter man removed $40 in currency. The taller man threatened to kill her if she moved. The two robbers fled. From photos taken by the store's surveillance camera, the victim identified appellant's uncle, one Shepard Green, as the gunman. Some months later, based on an anonymous tip, appellant was identified from the same photos.

## The Killing

At about 10 p.m., June 9, 1981, officers responded to a gas station, where they found victim Mike Tadlock lying face down near the pumps, with what appeared to be a gunshot wound in his back. At Valley Medical Center, he was pronounced dead of a gunshot wound to the heart. The officers talked to three witnesses at the scene. One was a woman who said the victim was a truck driver who had agreed to follow her to Sacramento in case her car broke down. She left the freeway to get gas at the station and the victim helped her put gas in her car. While he was talking to her through the passenger window, she saw two men approach the victim. One of them displayed a rifle and addressed the victim with an obscenity. Fearing for her own safety, she drove to a nearby restaurant.

A station employee saw three men approach the victim as he was talking to the woman through the car window. The witness thought the men were trying to rob the victim. One of the men returned to the vehicle from which he had come and got a rifle. The woman drove off. The three men pushed the victim, who walked away, at which point the gunman shot the victim in the back. The victim fell and the three men returned to their vehicle and left the scene.

A station customer saw two persons struggling with the victim. The victim walked away from them but a third person emerged from a car and shot the victim in the back with a rifle. The victim fell and the three men left in the car with the gunman driving.

On June 20, 1981, officers received an anonymous tip that the killer was one James Rivas and appellant had accompanied him. Appellant was arrested on June 24, 1981. He confessed to participating in the Seven-Eleven robbery and to involvement in the June 9 attempted robbery. According to the RPO: "During the subsequent interrogation, defendant Green confessed to participating in the robbery of the 7-Eleven Store on December 14, 1980. He also admitted that he was present at the Arco Twins Gas Station on June 9, 1981, when victim Tadlock was killed. He told the officers that he had accompanied his cousin, James Rivas, another individual, and that individual's girl friend to the gas station for the purpose of the woman finding a 'trick' for an act of prostitution. Eventually, though, Rivas and the other individual decided to rob victim Tadlock, who they observed talking to a woman through the passenger side window of her car. At first, defendant Green stated that he remained in the car while Rivas and the other individual approached victim Tadlock. He stated that the victim struggled with Rivas and the other individual, at which point Rivas returned to the car, obtained his rifle, and shot victim Tadlock. Later, Green admitted participating in the attempted robbery of victim Tadlock."

In stating a factual basis for his guilty plea, appellant said he was driving around with Rivas, a "dude" named Prentiss Murphy and a "broad" named Frankie. Rivas stopped the car near the station, said "we're going to rob that man," and he and Murphy jumped from the car. Rivas pulled the rifle from under the seat. The two men ran to the victim and Murphy grabbed him and tried to "load him" into their car. The victim broke loose. Appellant jumped out of the car to help in the robbery. The victim started walking across the street and Rivas shot him.

The RPO contained this assessment of "factors affecting probation," "circumstances in mitigation," and "circumstances in aggravation":

"FACTORS AFFECTING PROBATION

"Because the arming allegations in both matters were stricken and because defendant Green did not actually fire the shot that killed victim Tadlock, your officer can find no statutory provisions limiting or prohibiting a grant of probation as set forth in Rule 414a. However, because of the defendant's active participation during the robbery of the 7-Eleven Store and his involvement in the attempted robbery of victim Tadlock, a crime during which the victim was

killed by a co-defendant, it is apparent to your officer that defendant Green represents a significant threat to the community as set forth in Rule 414b.

"Regarding facts relating to the crimes as they affect a grant of probation as set forth in Rule 414c, your officer notes the extreme seriousness of the robbery of the 7-Eleven Store during which defendant took money from the cash register, while his co-defendant held the clerk at bay with a handgun. Further, the defendant's involvement in the attempted robbery of victim Tadlock is even more serious, in that when the victim resisted, he was shot and killed by a co-defendant. While defendant Green did not personally use a firearm during the crime or personally fire the shot that killed victim [Tadlock], it is apparent that he was vicariously armed with a firearm during the commission of each crime (Subsections 1, 2, 3, and 4). It is also apparent to your officer that defendant Green, despite his statements to the contrary, actively participated in both crimes (Subsection 5). Your officer also believes that the robbery of the 7-Eleven Store was executed with criminal sophistication, although the killing of victim Tadlock, while of overwhelming seriousness, demonstrated a lack of criminal sophistication (Subsection 7).

"Regarding facts relating to the defendant as they affect a grant of probation as set forth in Rule 414d, it is noted that defendant Green has no prior record of criminal conduct (Subsection 1). He also reports that he is a high school graduate and he denies the past use of any types of drugs or narcotics. He also reports he has fathered two children, but he has failed to maintain stable employment (Subsections 4, 5, and 6). The defendant has expressed a willingness to comply with the terms of probation, but based upon his involvement in the extremely serious instant crimes, your officer questions his ability to comply with the terms of a grant of probation (Subsection 3). Finally, your officer notes that defendant Green has expressed remorse for his involvement in the robbery of the 7-Eleven Store, but no remorse for his involvement in the crime which resulted in the death of victim Tadlock (Subsection 9).

## "CIRCUMSTANCES IN MITIGATION

"Regarding factors in mitigation relating to the crimes as set forth in Rule 423a, your officer notes that defendant Green played a less serious role in the robbery of the 7-Eleven Store than his armed co-participant, and clearly a less serious role than co-defendant Rivas in the killing of victim Tadlock (Subsection 1). The defendant also claims he was induced to participate in the instant crime by his accomplices (Subsection 5).

"Regarding factors in mitigation relating to the defendant as set forth in Rule 423b, it is noted that defendant Green has no prior record of criminal conduct

(Subsection 1). He also acknowledged his involvement in the instant crimes upon his arrest (Subsection 3).

"CIRCUMSTANCES IN AGGRAVATION

"Regarding factors in aggravation relating to the crimes as set forth in Rule 421a, your officer notes that defendant Green was vicariously armed with a firearm during the commission of both the robbery of the 7-Eleven Store and the attempted robbery of victim Tadlock were premeditated (Subsection 8).

"Regarding factors in aggravation relating to the defendant as set forth in Rule 421b, your officer notes that defendant Green has established a pattern of assaultive conduct, as evidenced by his involvement in the robbery of the 7-Eleven Store in December, 1980, and his involvement in the attempted robbery and subsequent death of victim Tadlock in June, 1981. These crimes also indicate that defendant Green represents a significant danger to the community (Subsection 1)."

The RPO recommended the middle base term because "the several significant factors in both mitigation and aggravation . . . appear to be balanced." However, it recommended consecutive terms because the crimes involved "distinct acts of violence, committed six months apart."

At the sentencing hearing, a lengthy discussion occurred as to the proper sentence. Appellant's trial counsel urged the middle base term. The probation officer adhered to the middle base term recommendation, even though he realized the sentences would be concurrent. The prosecutor urged the upper base term, which the judge ultimately imposed with this statement of reasons: "THE COURT: And the Court has considered the aggravating circumstances which are described in the probation report, of course, the personal involvement of the defendant by being vicariously armed when he participated in the robbery with someone who was armed and he knows it and it appears clear that the commission of these offenses, the robbery and the attempted robbery were premeditated, particularly it appears that as to this attempted robbery that was a scheme to involvement somebody in an act of prostitution or fain [sic] such an act and then engaging in robbing them, that appears to be a plan, premeditated, it shows sophistication operation of violence directed toward others, that these two offenses demonstrate the defendant has established a pattern of assaultive conduct and certainly this defendant represents a significant danger to the community as a result of these two offenses. And as the Court has indicated this defendant has, is before the Court for a voluntary manslaughter as to the killing arising out of the attempted robbery and the Court places that, whether the Court considers that factor as an aggravating factor or as a circumstance surrounding the mitigation of his less serious role, certainly he

played a less serious role if this were, if this were the crime of first degree murder, I suppose that would certainly be a substantial mitigating factor, but the Court feels that this mitigating factor is less significant as the People have reduced the charge down to what we have before us now, a voluntary manslaughter. So based on those observations and that reasoning, the Court finds that the circumstances in aggravation in action 272278-3 significantly outweigh the circumstances in mitigation and the Court selects as the base term the aggravated term of six years."

Appellant raises two basic complaints: first, that the judge improperly relied on his vicariously armed status in the December robbery to aggravate the transactionally unrelated June incident; second, that he relied for aggravation purposes on the fact that the plea bargain had precluded consecutive terms.

With regard to the first complaint, the judge was entitled to consider appellant's participation in the December robbery insofar as it tended to establish a pattern of violent conduct (Cal. Rules of Court, rule 421(b)(1)) when taken together with the June incident. However, aside from considering the December crime as part of a pattern, it would seem improper to consider as an additional, *independent* aggravating factor appellant's active participation in that earlier crime.

It is not clear, however, that the judge *intended* to refer to the earlier offense when he cited "the personal involvement of the defendant by being vicariously armed when he participated in the robbery with someone who was armed and he knew it. . . ." At various points throughout the prolix sentencing hearing, the judge referred to both crimes with the term "robbery," though the June offense involved only an attempt. At other points, he distinguished between the robbery and the attempt.

Further evidence that the judge simply misspoke himself comes from the fact that appellant's direct personal involvement in the December crime was shown by his taking the money from the cash register and did not depend on his participation "with someone who was armed and he knew it." It appears likely the judge was referring to the attempt but misspoke himself.

Were this the only issue, we would be inclined to resolve the ambiguity in respondent's favor. However, appellant's second point is valid. Our review of the sentencing hearing transcript reveals the judge based his sentencing choice, in substantial part, on the fact that appellant had benefited from a plea bargain which reduced a murder to a manslaughter and guaranteed concurrent terms on the unrelated robbery.

At the outset, the judge indicated he proposed to choose the upper base term on the manslaughter and impose concurrent terms. Appellant's counsel argued for the five-year middle base term. This exchange followed:

"[Prosecutor:] Only, Your Honor, that I think Mr. Green is lucky in that we did give him a plea bargain and allow him to get a maximum of six years as opposed to twenty-five to life. He easily would have gotten twenty-five to life had he been convicted of first degree murder. So I think that extra year—uh—or extra eight months is really not that great and for his involvement in the offense I think he got off easy with six years.

"THE COURT: Well, that is exactly how the Court analyzes the problem here. We have a young—there is no question that many of the things that you suggest are displayed by this report and the defendant's history. But the Court feels that it is almost a frivolous killing that occurred in the course of a robbery and imposing six years, and the Court feels it certainly frivolous, it in fact—if it gave anything less than the maximum, this is a killing that occurred in the course of a robbery which this defendant apparently at least something has occurred in his life which is now having him involved in two robberies, before this Court in terms of circumstances, the robbery in action 270549-9 and the robbery which resulted in essentially in a cold-blooded killing of a victim, wasn't even, from the circumstances I have there was no evidence that there was, that it was even done in terms of effecting escape or protecting themselves or any other kind of reason but just was, just shooting the victim in the back."

The probation officer then stated his view that the middle base term was proper and noted that the RPO recommended consecutive sentences "which was contrary to the plea bargain." The judge replied: "THE COURT: Yes, and I noticed that, which, which the Court feels—if the Court feels that is an appropriate observation, too, consecutive sentences certainly should be imposed here, but in view of the plea bargain the Court, which is actually being complied with as far as the defendant is concerned, the Court must comply with that plea bargain and feels it is appropriate in view of the People's position."

After the judge denied probation, this exchange occurred:

"The Court has considered the circumstances in mitigation. Certainly the defendant having played a less serious role in both of the robberies, the defendant has indicated he was induced to participate in the instant crime by his accomplices, but the Court has to notice that in both instances he had different accomplices, so the Court gives, unless you can offer something more to the Court, the Court does not give much weight to that matter as a mitigating factor.

"[DEFENSE COUNSEL:] I was not addressing it as a mitigating factor but merely trying to put the aggravating circumstances into perspective.

"THE COURT: Yes. And I am trying to do that, of course. And—

"[DEFENSE COUNSEL:] From my viewpoint.

"THE COURT: Yes. And certainly his, the role that he plays, which is pointed out as a mitigating factor that appears to be the key mitigating factor, which was again the key aggravating factor of what this crime legally and technically involved, what he could have been charged with and the penalty that could have been imposed.—"

After an intervening discussion of appellant's early acknowledgment of guilt and whether or not he showed remorse, the judge gave his summary of aggravating factors noted above.

In *People* v. *White* (1981) 117 Cal.App.3d 270 [172 Cal.Rptr. 612], defendant was charged with two counts of first degree murder but convicted of two counts of voluntary manslaughter. In choosing the upper base term of four years, the judge expressed the opinion that this was an inadequate punishment for voluntary manslaughter. The appellate court disregarded this as an improper factor, since punishment was for the Legislature. The court also stated: "It could be argued that the evidence in this case would have fully supported a conviction for the crimes of murder of the first degree. However, we must assume that the jury accepted the defense evidence regarding defendant's state of mind at the time of the killings and, on that basis, found him guilty of the lesser crimes of voluntary manslaughter. Although he expressed dissatisfaction with the somewhat minimal term of imprisonment fixed by the Legislature for such a serious crime, the trial judge, nevertheless, was bound to impose a sentence within the limits prescribed by law; but there was no restriction on his right, and obligation, to consider the circumstances surrounding the execution-style killing of each of the victims in setting the terms of imprisonment." (*Id.*, at p. 281.)

By a parity of reasoning, a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. Should he consider the plea bargain unacceptable, his remedy is to reject it, not to violate it, directly or indirectly. (Pen. Code, § 1192.5.) Thus, in *People* v. *Simpson* (1979) 90 Cal.App.3d 919, 924 [154 Cal.Rptr. 249], as here, the plea bargain provided for concurrent terms. The judge found as an aggravating factor that defendant had been convicted of other crimes for which consecutive terms could have been imposed (Cal. Rules of Court, rule 421(a)(7)). The appellate court held this factor was inapplicable, since "because of the bargain, this was not a case in which consecutive sentences 'could have been imposed.'" (*Ibid.*)

As *White* notes, the judge had the right and the duty to consider the circumstances of the incident in which the victim was killed. Included among those circumstances was the nature of appellant's role in the crime. However, characterization of appellant's role cannot logically depend on the crime of which he was convicted. The same acts cannot show minor or "less serious" participation in a felony murder but some greater role in a voluntary manslaughter. The judge's remarks suggest he either used the fact of the plea bargain to *discount* what otherwise would have been (in his own words) a "substantial mitigating factor" *or* to *aggravate.*

The judge's earlier remarks, though not made in precisely the same context, reflect the fact the judge gave improper weight to the reduction per plea bargain of the crime, as opposed to the unvarying facts of appellant's participation. Thus, when the deputy district attorney remarked that "eight months is really not that great and for his involvement in the offense I think he got off easy with six years," the judge agreed "that is exactly how the Court analyzes the problem here." The judge elaborated that it would be "frivolous" to give anything less than the maximum for the senseless killing here. Later, the judge referred to "the key aggravating factor of what this crime legally and technically involved, what he could have been charged with and the penalty that could have been imposed. . . ."

The record shows that several significant mitigating factors were present. Based on the repeated references quoted above, the judge apparently gave considerable weight to the somewhat minimal term of imprisonment fixed by the Legislature for voluntary manslaughter when contrasted with the punishment for first degree murder. Remand for resentencing is appropriate. At resentencing, the judge shall consider all the circumstances of the offense and of appellant's participation therein, but shall not consider the fact that the crime was reduced per plea bargain, the differences in sentence between felony murder and voluntary manslaughter, or any other factor which in practical effect circumvents the plea bargain.

The judgment in action No. 272278-3 is reversed for sentencing error only and the matter is remanded for resentencing in accordance with the principles expressed herein. In all other respects, the judgment is affirmed.