[No. A071187. First Dist., Div. Two. Apr. 24, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
YUN KO TANG, Defendant and Appellant.

**COUNSEL**

Arthur Lang Wong, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LAMBDEN, J.**—Penal Code section 1203.03 empowers a sentencing court to temporarily commit a convicted felon to a diagnostic facility of the Department of Corrections for a report containing a "diagnosis and recommendation concerning the disposition of the defendant's case." (Pen. Code, § 1203.03, subd. (b).) (All further statutory references are to the Penal Code, unless otherwise indicated.) This case presents the question whether such a report, when prepared pursuant to a negotiated plea, binds the court to accept the recommended disposition under circumstances where defendant contends the recommendation is faulty in its premises. We conclude the court and the defendant may agree to be bound by such a recommendation so long as the court actually exercises its sentencing discretion.

### I. BACKGROUND

On July 6, 1994, defendant was a 53-year-old cabdriver and sometime chef. He had no criminal record. During the course of the day, he and the victim, Gong Bo Kwong, quarreled repeatedly over a $20 bet Mr. Kwong had made with defendant's wife. Late in the evening Mr. Kwong walked up to defendant in a hotel lobby, pulled out a cleaver and "struck [defendant] on the left side of his head," inflicting a wound requiring two deep stitches and seven minor stitches. Mr. Kwong was escorted from the hotel.

Defendant pursued Kwong onto the street and stabbed him four times with a knife. A bystander reported seeing defendant come out of the hotel "with blood coming down his face. He proceeded to scream at [Kwong] produced a knife, continued to yell at the victim and stabbed him repeatedly. When [Kwong] fell to the ground, the defendant kicked him." Mr. Kwong died on the operating table.

Defendant was charged with voluntary manslaughter (§ 192, subd. (a)) and the information alleged a one-year sentence enhancement for personal use of a deadly weapon (§ 12022, subd. (b); see present § 12022, subd. (b)(1)). On January 10, 1995, defense counsel announced his client's intention to plead guilty to the lesser charge of involuntary manslaughter. Counsel for both parties stipulated that involuntary manslaughter (§ 192, subd. (b)) was a lesser included offense of voluntary manslaughter (§ 192, subd. (a)), and expressly waived any objection to so treating it.

After reciting the usual consequences of the plea, defense counsel stated: "It's anticipated, Your Honor, there would be a 1203.03 evaluation and a two-year top in the event the court did decline to grant probation in this case." The prosecutor pronounced this "a fair statement of the negotiations." Defendant pleaded guilty and admitted the weapons-use allegation. Defendant was transferred to San Quentin for the agreed diagnostic evaluation pursuant to section 1203.03.

Section 1203.03 provides in part: "(a) In any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison, the court, if it concludes that a just disposition of the case requires such diagnosis and treatment services as can be provided at a diagnostic facility of the Department of Corrections, may order that defendant be placed temporarily in such facility for a period not to exceed 90 days, with the further provision in such order that the Director of the Department of Corrections report to the court his diagnosis and recommendations concerning the defendant within the 90-day period. [¶] (b) The Director of the Department of Corrections shall, within the 90 days, cause defendant to be observed and examined and shall forward to the court his diagnosis and recommendations concerning the disposition of defendant's case. Such diagnosis and recommendation shall be embodied in a written report . . . ."

Defendant's case was first reviewed by senior staff psychologist M. Lyons, who concluded: "[a] comprehensive and in[-]depth psychological evaluation does not appear necessary" because there was no indication in the "background information" of "any psychiatric condition or psychological factors that might significantly contribute" to an overall assessment of defendant's suitability for probation. Defendant was then interviewed by correctional counselor Dave Miller, who added, gratuitously: "[W]hile it is regrettable that a man met his death in this incident, the 'victim' in this case was actually the instigator . . . . Mr. Tang can be criticized for pursuing and stabbing someone who was no longer placing him in danger, but as a meat cleaver is not only sharp, but is a heavy implement, Mr. Tang was very likely disoriented as well as afraid and angry. Nevertheless, since Mr. Tang was no longer in danger he was not legally justified in pursuing and stabbing the deceased. His anger is understandable, but society cannot function when the law is taken into an individual's own hands. That's why there are police. That is also why I cannot recommend probation at this time. But I also do not feel that Mr. Tang should be sent to prison when he did not instigate this situation. I would, therefore, recommend that Mr. Tang be sentenced to a term in the San Francisco County Jail, followed by strictly supervised probation."

Counselor Miller, on March 30, issued an "Institutional Staff Recommendation Summary/1203.03 PC Report." In it he noted defendant had no

known criminal record, was reported to have "adapted well to his stay" at the prison, and had "not been a management problem to this point." In the interview defendant had described the arrest report as "correct as written," but also told Counselor Miller he had stabbed the victim in self-defense. "When I reminded him that the victim was running from the scene," Counselor Miller wrote, "Mr. Tang said he had been cut, and was bleeding badly and was still afraid, in spite of the fact that the victim was running." Counselor Miller ultimately recommended defendant "be sentenced to a term in the San Francisco County Jail, followed by strictly supervised probation." This recommendation was preceded by the contradictory remark, "I cannot recommend probation at this time."

About 10 days after Counselor Miller completed his report, Associate Warden G. Davis promulgated a two-page "Diagnostic Study and Recommendation by the California Department of Corrections Under Provisions of Penal Code Section 1203.03." This document included three recitals central to our review: (1) "Mr. Tang's criminal record is contained in the Counselor's evaluation and the Probation Officer's report"; (2) "Departmental staff have assessed Mr. Tang as an unsuitable candidate for probation"; and (3) "Staff therefore recommend that he be removed from society and placed in the California Department of Corrections."

Warden Davis based his recommendation on the conclusion defendant acted "out of anger, not in self[-]defense as he claims" and that the victim was fleeing. He acknowledged the victim "appeared" to be the instigator, but added, "this does not excuse Mr. Tang's action." He observed there was "no justification . . . to support Mr. Tang's taking the law into his own hands," and added, "[T]his indicates to me Mr. Tang's criminal behavior presents a threat to society and efforts at resolving his behavior by local community programs are viewed as unwarranted." He concluded by recommending a prison sentence.

On May 10, 1995, the court reconvened proceedings and expressed its readiness to pronounce sentence. The prosecutor admitted he had expected the department to recommend probation, but argued the section 1203.03 recommendation was dispositive. Even if the recommendation was "in error," he said, the court was "bound" by it unless the associate warden "change[d] his recommendation." The court adopted this argument: "We did say that the court will sentence him based on the recommendation of a 1203.03. The recommendation by the Assistant [sic] Warden, Mr. Davis, is state prison. [¶] I'm prepared to sentence him to state prison for two years unless you [defense counsel] feel that it's appropriate for you to ask Mr. Davis to reconsider his recommendation." The court rejected defense counsel's contention the section 1203.03 report did not amount to a recommendation of imprisonment but instead reflected a "split decision."

The court granted two continuances to permit the defense to attempt to obtain clarification from the associate warden, or to compel his attendance in court. Those efforts were unavailing. When a Department of Corrections attorney indicated Messrs. Davis and Miller would not voluntarily comply with subpoenas issued by the defense, the court declined to issue body attachments. Finally, defense counsel gave up but objected the court's adherence to the section 1203.03 recommendation was a denial of due process. The court sentenced defendant, "pursuant to negotiations," to two years in state prison.

Defendant filed a timely notice of appeal.

## II. Discussion

### A. *The Court's Examination of the Section 1203.03 Report*

The negotiated plea in this case anticipated there would be a section 1203.03 evaluation and the court would impose a maximum two-year sentence if the court declined to grant probation. Both attorneys and the defendant confirmed the terms of the agreement prior to defendant's change of his plea to "guilty" and his admission of the weapons-use allegation. The court accepted the change of plea and made the referral as agreed. No issues are raised as to the procedure employed for the preservation of defendant's due process rights in connection with the change of plea.

In *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171] (*Arbuckle*), the Supreme Court examined the proper role and due process implications of a plea agreement contingent upon a section 1203.03 report. In its holding, the court approved a plea disposition very similar to the one employed in the instant case, whereby the court agreed to follow the recommendation contained in a section 1203.03 report. The Supreme Court rejected Arbuckle's contention he was denied due process because he was not permitted to cross-examine the personnel who prepared the report or permitted to introduce expert testimony challenging the methodology used. The court reversed and remanded the judgment in *Arbuckle* because the sentence was imposed by a judge different from the one who accepted the change of plea, the holding for which the case has become best known.

Defendant attempts to distinguish *Arbuckle* by pointing out the section 1203.03 report in that case was "fair on its face" in contrast to the alleged factual errors and misconceptions in the report in this case. However, the logic employed by the Supreme Court in reaching the result in *Arbuckle* also

disposes of the issues raised in this appeal. The question presented here and not considered by *Arbuckle* is how a trial court should deal with undisputed ambiguities and contradictions contained in the report prepared in response to such a referral. We note this recommendation was based expressly upon an analysis of the facts of the case and without reference to the premises cited by the defense as erroneous and contradictory.

It is undisputed this defendant challenged the factual statements contained in the "report." The two-page "Diagnostic Study and Recommendation by the California Department of Corrections Under Provisions of Penal Code Section 1203.03" prepared by Associate Warden Davis contains three recitals which defendant contends are directly contradicted by the materials prepared by staff psychologist Lyons and correctional counselor Miller: (1) "Mr. Tang's criminal record is contained in the Counselor's evaluation and the Probation Officer's Report"; (2) "[d]epartmental staff have assessed Mr. Tang as an unsuitable candidate for probation"; and (3) "[s]taff therefore recommend that he be removed from society and placed in the California Department of Corrections." The defendant has always contended all three of these recitals were incorrect.

The prosecutor acknowledged the inconsistencies in the report. Even if the recommendation was "in error," the prosecutor said, the court was "bound" by it unless the associate warden "change[d] his recommendation." The court apparently adopted this argument and stated: "[w]e did say that the court will sentence him based on the recommendation of a 1203.03. The recommendation by the Assistant [*sic*] Warden, Mr. Davis, is state prison. [¶] I'm prepared to sentence him to state prison for two years unless you [defense counsel] feel that it's appropriate for you to ask Mr. Davis to reconsider his recommendation."

The court granted two continuances to permit the defense to obtain clarification from the associate warden who signed the report or, alternatively, to compel his attendance in court. However, the court was justified by the decision in *Arbuckle* in refusing to issue body attachments for the attendance of personnel who prepared the report after efforts to obtain their voluntary compliance with subpoenas were unavailing. The *Arbuckle* court held: "[t]he defendant could have challenged factual statements contained in the report by presenting his own evidence; but fundamental fairness does not require that he be allowed to challenge such statements by cross-examining the personnel who prepared the report, nor does it require that he be permitted to challenge the professional methods they employed. The report was fair on its face; a full hearing on collateral issues emanating in an ever-widening circle from the central issue—the proper sentence to be

imposed—is therefore not warranted." (*Arbuckle*, *supra*, 22 Cal.3d 749, 755.)

It is undisputed the section 1203.03 report in this case contained flaws. It contained gratuitous statements not strictly within the mandate of the statute, such as Miller's disapproval of vigilantism. It contains factual errors as exemplified by the reference to a "criminal record" in its recitals. It contains contradictory recommendations for probation by both Lyons and Miller in conjunction with statements that neither could recommend probation.

However, it is not necessary for us to determine whether or not the report was "fair on its face," within whatever meaning was intended by the Supreme Court in *Arbuckle*, and it is not necessary for us to examine de novo the flaws contained in the report. It is evident from the record the court must have been aware of the inconsistencies in the report, which were discussed at multiple hearings scheduled to give the defense an opportunity to present evidence challenging its factual basis. The associate warden's ultimate recommendation does not refer to the questionable material contained in the body of the report; his conclusion is based on the facts of the case. The court had the opportunity to examine the report and permitted defendant time to bring any further relevant evidence to the hearing, short of compelling the attendance of the associate warden.

Under the circumstances, we conclude the sentencing court exercised its sentencing discretion in light of all appropriate factors, including not only the recommendation but also the underlying report as well as other information properly before the court. The trial court was permitted to structure a change of plea agreement around the expectation of a section 1203.03 recommendation which might affect the range of sentencing options. The agreement was honored. The trial court correctly refused to invoke the power of the court to permit the defense to cross-examine the personnel who prepared the report. We will not speculate to conclude the trial court failed to consider the recommendation in light of all appropriate factors, including factual inconsistencies, apparent in the record.

■ While courts' sentencing discretion is constitutionally mandated and therefore jealously guarded, a trial court's failure to exercise such discretion must be demonstrated in the same manner as any other error. "We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed. [Citation.]" (*People* v. *Garcia* (1987) 195 Cal.App.3d 191, 198 [240 Cal.Rptr. 703]; see also *People* v. *Blackwood* (1983) 138 Cal.App.3d 939, 949 [188 Cal.Rptr. 359].) ■ This record demonstrates the trial court

was aware of the alleged errors in the report and of the recommendation, as well as cognizant of other information available at the extended sentencing hearing. This permits us to conclude the trial court actually exercised its sentencing discretion.

## B. *Nondelegable Sentencing Discretion*

The mere presence of erroneous sentencing information in the record does not require reversal; such information becomes constitutionally significant only if the sentencing court relies upon it. (*In re Beal* (1975) 46 Cal.App.3d 94, 100, 102 [120 Cal.Rptr. 11]; *In re Dexter* (1979) 25 Cal.3d 921, 930, fn. 2 [160 Cal.Rptr. 118, 603 P.2d 35]; *People* v. *Bustamante* (1992) 7 Cal.App.4th 722, 726 [9 Cal.Rptr.2d 244].) This record does not establish the associate warden relied upon inaccurate information in the preparation of the recommendation relied upon, in turn, by the court. This is true despite mistakes of fact, such as reference to a nonexistent "criminal record," and also despite contradictory statements by both the staff psychologist and the counselor.

As noted by the Supreme Court in *Arbuckle, supra,* 22 Cal.3d 749, 754-755, "[r]eliability of the information considered by the court is the key issue in determining fundamental fairness." In upholding the propriety of reliance upon such reports, the *Arbuckle* court noted the "inherent reliability" of a report made pursuant to a court order by an expert. The court also acknowledged the other factual information and criteria considered by the sentencing court included the probation officer's report and the legal presumption against probation set forth in section 1203, subdivision (e). The report does not stand in isolation and should be considered in conjunction with whatever information is available to the court, including information which may have been presented by the defense, uncontroverted information contained in the report, and even hearsay comments by an informant found to be sufficiently reliable. (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187], cited in *Arbuckle, supra,* at p. 755.)

The trial court in this case had more information to consider than merely the recommendation of the associate warden. The facts surrounding the death of the victim were undisputed and supported the presumptive ineligibility of defendant for probation under section 1203, subdivision (e): "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to . . . . [¶] . . . Any person who used . . . a deadly weapon upon a human being . . . ." (§ 1203, subd. (e)(2).)

However, this record neither expressly indicates the court examined the underlying facts upon which the recommendation was based nor states the

court was relying upon the presumptive ineligibility provided by section 1203, subdivision (e). Rather, the court simply stated it would follow the terms of the agreement and impose the agreed upper limit of two years in prison. This adherence to the recommendation of the Department of Corrections is argued by defendant to constitute a prejudicial failure to exercise the court's nondelegable sentencing discretion. However, the record implies the court examined the factors relevant to probation and rejected them in favor of a prison sentence.

The court was "bound" to adhere to the agreement which resulted in defendant's change of plea. Defendant stipulated he would be sentenced to a maximum of 24 months in state prison in the event the court was unable to grant probation based on the expected section 1203.03 recommendation. Defendant cites no authority, nor have we found any, which would have required this trial court to alter the negotiated disposition by imposing probation or allowed the court to sentence defendant to more than 24 months in prison. Presumably, defendant would have been satisfied with a section 1203.03 recommendation for probation and foregone this appeal, but probation was not the recommendation. However, defendant cannot, by a collateral attack upon the underlying report, force the court to exercise its sentencing discretion in a particular fashion.

■ " '[T]he severity of the sentence and the placing of defendant on probation rest in the sound discretion of the trial court . . . . [T]he law contemplates an exercise of that discretion by the sentencing judge and in the absence of such exercise there has been no lawfully imposed sentence.' " (*People* v. *Hernandez* (1984) 160 Cal.App.3d 725, 749 [206 Cal.Rptr. 843]; *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826]; see § 1203, subd. (b)(3) [at the sentencing hearing, "*the court shall* hear and determine . . . the suitability of probation in the particular case . . . . [*T*]*he court* shall consider any report of the probation officer . . . . If *the court* determines that there are circumstances in mitigation . . . or that the ends of justice would be served by granting probation to the person, *it* may place the person on probation" (italics added)]; *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372 [257 Cal.Rptr. 821] [". . . courts may not delegate the exercise of their discretion to probation officers"]; *In re Gonzales* (1974) 43 Cal.App.3d 616, 620 [118 Cal.Rptr. 69] [order conditioning grant of probation on Adult Authority's revocation of parole was "an unlawful abdication of judicial discretion," because power to continue, revoke, or modify probation "is a judicial power manifested through the judge's personal examination of the case before him[,]" which "cannot be delegated to a nonjudicial agency"]; *People* v. *Tenorio* (1970) 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993] ["When an individual judge exercises sentencing discretion, he

exercises a judicial power which must be based upon an examination of the circumstances of the particular case before him, and which is subject to review for abuse."]; see also *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]; *In re Armondo A.* (1992) 3 Cal.App.4th 1185, 1189-1190 [5 Cal.Rptr.2d 101] [matter remanded for exercise of independent discretion where denial of informal juvenile probation rested on deferential review of probation officer's conclusions].)

Of course, had the court denied probation in material reliance on faulty information, it could have committed reversible error. (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, §§ 1653, 1655, pp. 1966-1968.) It would have been a denial of due process for the court itself to have misread an underlying report so as to rely upon an erroneously exaggerated criminal history. (*Townsend* v. *Burke* (1948) 334 U.S. 736, 741 [68 S.Ct. 1252, 1255, 92 L.Ed. 1690].) A fair reading of the record indicates the trial court did not rely on faulty information contained in the report. Rather, when the court stated it was "bound" by the recommendation we conclude it meant it was bound by the underlying plea agreement and, having examined all information available to it, exercised its discretion in favor of the upper limit to be imposed within the parameters of the plea agreement.

"While no bargain or agreement can divest the court of the sentencing discretion it inherently possesses (*People* v. *Arbuckle* [, *supra*,] 22 Cal.3d 749, 756 . . .), a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. (*People* v. *Green* (1982) 142 Cal.App.3d 207, 215 [192 Cal.Rptr. 146].) 'A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.' (*People* v. *Shepeard* (1985) 169 Cal.App.3d 580, 586 [215 Cal.Rptr. 401], disapproved on other grounds in *People* v. *Martin* (1986) 42 Cal.3d 437, 451, fn. 13 [229 Cal.Rptr. 131, 722 P.2d 905].) Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. (*People* v. *Green*, *supra*, 142 Cal.App.3d at p. 215.) Once the court has accepted the terms of the negotiated plea, '[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree.' [Citation.]" (*People* v. *Ames* (1989) 213 Cal.App.3d 1214, 1217 [261 Cal.Rptr. 911].)

C. *Binding Effect of the Plea Agreement*

Respondent also contends defendant gave up the right to challenge the reliability of the section 1203.03 recommendation, and the court's

ultimate reliance upon it, by the terms of his agreement to change his plea. "Appellant agreed to abide by the recommendation of the Department of Corrections," argues respondent; "[h]e cannot now complain because he disagreed with that recommendation." (Defendant concedes on appeal he "agreed . . . he would follow the recommendation in the 1203.03 report for purposes of sentencing," but contends he did not agree to be bound by a flawed report. The question, answered above, is how the court utilizes such a recommendation in the exercise of its sentencing discretion.

The record reflects consideration of the section 1203.03 report and the ultimate recommendation of the associate warden. Moreover, it is clear the court was aware of the presumptive ineligibility of defendant for probation as provided by section 1203.03, subdivision (e). Under these circumstances, it is not reasonable to conclude the court improperly deferred its sentencing discretion to the Department of Corrections. On the contrary, it appears the court independently agreed with the section 1203.03 recommendation and sentenced accordingly. There is nothing in the sentence selected by the court, which was not within the parameters of the agreement, which would allow defendant to complain the agreement was violated in such a fashion so as to require setting aside the plea. As noted in *Arbuckle*, ". . . no special procedural right is created by such an agreement, except that the defendant could have withdrawn his guilty plea should the judge have proposed to sentence him to prison contrary to the . . . recommendation. [Citation.]" (*Arbuckle, supra,* 22 Cal.3d 749, 756.)

### D. *Authority to Depart From the Recommendation*

 We also reject respondent's contention that defendant's exclusive remedy was to move to set aside his guilty plea. This remedy applies when the sentencing court "withdraw[s] its approval" of the agreed punishment "in the light of further consideration of the matter." (§ 1192.5.) There is no evidence of any request for withdrawal of approval of the agreement in this case. Of the three cases cited by respondent, one involved a deliberate upward deviation from an agreed sentence, and is therefore distinguishable (*People* v. *Murray* (1995) 32 Cal.App.4th 1539 [39 Cal.Rptr.2d 7]). The other two had nothing to do with plea agreements or to changes of pleas based on stated terms, but rather found errors to be waived by the defendants' failures to object. (*People* v. *Saunders* (1993) 5 Cal.4th 580, 589-592 [20 Cal.Rptr.2d 638, 853 P.2d 1093]; *People* v. *Scott* (1994) 9 Cal.4th 331, 351-353, 356 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Defendant in the instant case repeatedly objected to the court's utilization of the section 1203.03 report and no waivers occurred. Respondent finally contends the trial court lacked authority to depart from the section 1203.03 recommendation "without the consent of the people," and that any attempt to do so would entitle

the prosecution to set aside the plea. (See *People* v. *Ames*, *supra*, 213 Cal.App.3d 1214, 1217 [once it has accepted the bargain, court lacks jurisdiction to alter terms in defendant's favor " 'unless, of course, the parties agree' "]; *People* v. *Armendariz* (1993) 16 Cal.App.4th 906, 910 [20 Cal.Rptr.2d 311].)

As set forth above, the plea agreement in this case could likewise not be understood to divest the court of discretion to depart downward from the two-year maximum in the event of a different section 1203.03 recommendation. Just as defendant cannot be heard to complain of a sentence which honors the terms of the agreement, a downward departure from the maximum sentence agreed to be imposed, based on sound exercise of discretion, could afford no ground for complaint by the prosecution.

■ The People, as well as a defendant, are entitled to enforce the terms of a plea bargain. (*People* v. *Collins* (1978) 21 Cal.3d 208, 214 [145 Cal.Rptr. 686, 577 P.2d 1026].) "The state, in entering a plea bargain, generally contemplates a certain ultimate result; integral to its bargain is the defendant's vulnerability to a term of punishment." (*Id.* at p. 215.) ■ However, this court did not depart from the recommendation contained in the section 1203.03 report and the ultimate result was expressly agreed to by the parties: the imposition of a two-year prison term.

E. *Prejudicial Effect*

■ The Supreme Court has declared the harmless error test "inapplicable to a situation involving failure to fulfill the terms of a plea bargain." (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 865 [187 Cal.Rptr. 441, 654 P.2d 211].) Because we find the trial court honored the terms of the plea agreement and actually exercised its sentencing discretion within the contemplation of that agreement, it is unnecessary for us to consider the prejudice argued by defendant to have resulted from the court's concurrence with the section 1203.03 recommendation. Even though the underlayment of the report discloses two persons who interviewed defendant and recommended supervised probation, these recommendations for probation were contradicted by other statements and speak for themselves in the context of other information available to the sentencing court. Whether or not these contradictory recommendations might have become the ultimate conclusion of the report could not be explored by cross-examination of the involved Department of Corrections personnel or by submission of collateral expert testimony, under the express holding of *Arbuckle*. Thus, defendant indirectly argues he has been prejudiced by the trial court's adherence to the restrictions imposed by the Supreme Court upon examination of matters collateral

to the trial court's exercise of sentencing discretion. We reject this argument and conclude the trial court had, and before exercising its discretion, considered the entire 1203.03 report and recommendation.

CONCLUSION

A sentencing court may properly accept a change of plea based upon an agreement anticipating a sentence contingent upon the recommendation resulting from a section 1203.03 referral. However, the section 1203.03 recommendation does not play a fundamentally different role than it would in a case of any other sentence undertaken by the court; it is simply one factor among others, both factual and legal, to be considered by the judge in pronouncing sentence. No agreement or bargain can divest the court of its inherent sentencing discretion, although a variance from a change of plea agreement may require the plea to be set aside. The sentencing court cannot be required to follow the section 1203.03 recommendation and must exercise its discretion in light of all appropriate factors, including the recommendation and its underlying premises, in order to discharge properly the sentencing function. Where the trial court has before it sufficient information upon which to exercise sentencing discretion and does so in a manner consistent with the underlying plea agreement, the judgment of the court will be presumed to be correct unless error is affirmatively demonstrated by evidence at a fair hearing restricted to the ambit of inquiry permitted by *Arbuckle*, and without the necessity of the fullest possible hearing on collateral issues "emanating in an ever-widening circle from the central issue—the proper sentence to be imposed . . . ." (*Arbuckle, supra*, 22 Cal.3d 749, 755.)

The judgment is affirmed.

Haerle, Acting P. J., and Ruvolo, J., consurred.

A petition for a rehearing was denied May 20, 1997, and appellant's petition for review by the Supreme Court was denied July 23, 1997.