While I concur with several points made by the majority, I respectfully disagree with its ultimate holding, because I believe that holding ignores the legal significance — or rather the lack thereof — of the criticisms the majority makes of the trial court's rulings regarding the presence of a uniformed and armed bailiff near appellant in the course of the trial.
First of all, I agree with the majority's criticism of the trial court's refusal to admonish the jury that they should not draw any adverse inferences from stationing of the bailiff near defendant when he was sitting at the defense table and when he was on the witness stand. (See maj. opn., ante, at pp. 963-965.) Such an instruction was provided, and quite properly I think, in a case the majority cites, People v.Marks (2003) 31 Cal.4th 197, 223 [2 Cal.Rptr.3d 252, 72 P.3d 1222] (Marks). But nowhere in that opinion did our Supreme Court state — or even hint for that matter — that such an instruction is required under those or similar circumstances. And the majority cites no authority holding that such an instruction is required under those circumstances.
Secondly, I agree with the majority's criticism[1] of the trial court's failure to make clear, on the record, that it was making a discretionary "call" and citing the bases for its exercise of discretion. But, and apparently unlike the majority, I think the trial court's ruling is, at the very least, ambivalent regarding whether it was in fact exercising its discretion. Suggesting that it was doing so are its several references to the facts that this defendant was charged with "a 245 with a very bad injury," and had "an 18-page rap sheet" including "burglary and restraining order violations, which means inability to follow the orders of the court." Finally, this seems to be confirmed by the trial judge's express statement that she was making a "discretionary call." On the other side of the coin are her comments that she followed this procedure in "every trial I've ever done," "even in . . . petty theft" trials. Hence my conclusion that the trial court was ambivalent on the issue of whether or not it was exercising its discretion.
But, and per a case decided by this court, any such ambivalence must be interpreted in favor of the conclusion that the trial court did indeed exercise its discretion. In People v. Tang (1997) 54 Cal.App.4th 669 [62 Cal.Rptr.2d 876] (Tang), we affirmed the trial court's sentence of a defendant who had pled guilty to voluntary manslaughter. On appeal, that defendant challenged the sentence imposed, arguing that certain facts in the record, especially the fact that the sentencing report before the trial court perhaps contained some errors, demonstrated that it had not, in fact, exercised its discretion regarding *Page 970 
the sentence imposed. We rejected this argument in these words, words I submit are equally applicable here: "While courts' sentencing discretion is constitutionally mandated and therefore jealously guarded, a trial court's failure to exercise such discretion must be demonstrated in the same manner as any other error. `We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error — it will not be presumed. [Citation.]' [Citations.]" (Id. at p. 677; see also People v. Mosley (1997) 53 Cal.App.4th 489,496 [62 Cal.Rptr.2d 268].) Notably, the majority cites no decisions contrary to Tang's statement of the law.[2]
However, my principal reason for dissenting is that I believe the majority's extended attempt to distinguish over a dozen appellate precedents, [3] including particularly the holdings of our Supreme Court in Marks and the United States Supreme Court in Holbrook v. Flynn (1986)475 U.S. 560, 568-569 [89 L.Ed.2d 525, 106 S.Ct. 1340] (Holbrook), fails completely. It does so, I submit, principally because the majority neither fully quotes nor follows the statement of the applicable law found in Marks.
That statement is encompassed in two paragraphs of Marks; those paragraphs read: "Defendant cites [People v.] Duran [(1976) 16 Cal.3d 282
[127 Cal.Rptr. 618, 545 P.2d 1322]] for the proposition that there must be a `manifest need' for the placement of the marshal so close to him as he testified. Duran imposed the manifest need standard for the use of physical restraints. [Citation.] Duran expressly distinguished such shackling from monitoring by security personnel. `We are not here concerned with the use of armed guards in the courtroom. Unless they are present in unreasonable numbers, such presence need not be justified by the court or the prosecutor.' (Duran, at p. 291, fn. 8.) The Duran
holding encompassed not only the standard positioning of officers but also their unusual deployment, as is shown by its citation to People v.David (1939) 12 Cal.2d 639, 644 [86 P.2d 811], where a deputy drew up his chair immediately behind where the defendant was sitting. [Citation.] The distinction between shackling and monitoring is long-standing. The David
court distinguished that case's deployment of security personnel with the physical restraints that caused prejudice in People v. Harrington (1871)42 Cal. 165. [Citation.] Harrington *Page 971 
was the primary authority on which Duran relied, and its reasoning indicates that courtroom monitoring by security personnel does not necessarily create the prejudice created by shackling. `"[A]ny . . . physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf."' [Citation.] The United States Supreme Court has likewise refused to find the `conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial [as] the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest. . . .' [Citing Holbrook.] Holbrook observed, `While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, . . . it is entirely possible that jurors will not infer anything at all from the presence of the guards. . . . Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.' [Citation.] [¶] We therefore maintain this distinction between shackling and the deployment of security personnel, and decline to impose the manifest need standard for the deployment of marshals inside the courtroom. (Duran, supra, 16 Cal.3d at p. 291, fn. 8.)" (Marks, supra,31 Cal.4th at pp. 223-224, italics omitted.)
We are, as the majority acknowledges, [4] not dealing at all with the "shackling" issue here. Nor, to quote Marks, are we dealing with "`unreasonable numbers'" of bailiffs or with any other "`numbers or weaponry [that might] suggest particular official concern or alarm.'" (Marks, supra, 31 Cal.4th at pp. 223-224.) We are dealing, rather, with the stationing of one bailiff near defendant — exactly the same situation as in Marks.
I respectfully submit that the foregoing two paragraphs from Marks — a unanimous decision of our Supreme Court issued just six years ago — mean, shortly and simply, that the stationing of a single bailiff near an in-custody defendant, particularly one on trial for a violent crime (both of which factors were present here), is not now and never has been an abuse of discretion. Indeed, nowhere in its 32-page opinion does the majority cite any decision so holding. *Page 972 
Holbrook was also a unanimous decision, one in which the United States Supreme Court, in a decision written by Justice Thurgood Marshall, reversed a decision of the court of appeals for the First Circuit which had, in turn, reversed a federal district court's denial of a habeas corpus petition attacking a Rhode Island state court conviction. There, as the majority notes, the trial court permitted the seating of four uniformed state troopers "in the first row of the spectators' section" of the courtroom during the trial of six in-custody defendants accused of breaking into safe deposit boxes and escaping with several million dollars. (Holbrook, supra, 475 U.S. at pp. 562, 565.) The court found this action not "inherently prejudicial," in the process distinguishing cases involving the shackling or binding of a defendant. It held that "`reason, principle, and common human experience,' [citation] counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial." (Id. at p. 569.)
I submit that, contrary to Holbrook and the long line of federal cases following it, [5] the majority's holding here is effectively based on precisely the sort of "presumption" unanimously rejected by the Holbrook
court.
In any event, the holdings of our Supreme Court in Marks, Duran andDavid and the United States Supreme Court in Holbrook make clear, I submit, that the governing legal principle applicable in a case such as this is: it is not an abuse of discretion for a trial court to station a bailiff or deputy sheriff behind or near an in-custody defendant charged with a violent crime whether that defendant is sitting at the defense table or on the witness stand.[6] And despite the extended efforts of the majority to distinguish Marks, Duran, David, Holbrook, and many other federal and state appellate cases (see maj. opn., ante, at pp. 955-966), it cites no authority at all holding to the contrary of that principle. Nor (as noted above) does it cite any case — federal or state — finding prejudice in the stationing of a bailiff near an in-custody defendant in the courtroom. *Page 973 
Although, for the reasons stated at the beginning of this opinion, I agree with the majority that the bailiff-stationing issue could have been handled better by the trial court, I respectfully submit that abundant legal precedent precludes our reversing this judgment.
[1] Regarding that criticism, I believe some of the majority's language (e.g., "so irrational as to go beyond the legal pale" and "dereliction of her preeminent judicial responsibility") (maj. opn., ante, at p. 963) is unnecessarily harsh.
[2] Our Supreme Court's Marks opinion quotes the instruction given in that case by a very experienced Alameda County Superior Court judge that the stationing of a bailiff "`next to the jury box'" when that defendant was testifying "`is a perfectly normal procedure'" (Marks, supra,31 Cal.4th at p. 223). This language suggests that this trial court is not alone in using such a procedure.
[3] See majority opinion, ante, at pages 953-962.
[4] Curiously, the majority devotes several pages of its opinion to cases involving defendants required to wear prison clothing and/or being shackled in some way. (Maj. opn., ante, at pp. 954-955.) As Marks makes clear, this is a totally different situation than that involved in both that case and here.
[5] Since Holbrook, apparently no federal court has held that the use of normal security guards in a courtroom has prejudiced a criminal defendant. (See Thirty-Sixth Annual Review of Criminal Procedure,Competency to Stand Trial (2007) 36 Geo. L.J. Ann.Rev.Crim.Proc. 1, 551, fn. 1716.)
[6] See also People v. Ainsworth (1988) 45 Cal.3d 984, 1003-1004 [248 Cal.Rptr. 568, 755 P.2d 1017]; People v. Miranda (1987) 44 Cal.3d 57,114-115 [241 Cal.Rptr. 594, 744 P.2d 1127], disapproved in part on other grounds in People v. Marshall (1990) 50 Cal.3d 907, 933, fn. 4 [269 Cal.Rptr. 269, 790 P.2d 676]; and People v. Jenkins (2000)22 Cal.4th 900, 997-999 [95 Cal.Rptr.2d 377, 997 P.2d 1044]. Even more cases to the same effect — and with the same result, i.e., no error in the stationing of a bailiff in a courtroom — are cited in 5 Witkin, California Criminal Law (3d ed. 2000) Criminal Trial, section 17, pages 61-62. *Page 974